FEDERAL EXPRESS CORP., Plaintiff,

v.

CALIFORNIA PUBLIC UTILITIES COMMISSION, et al., Defendants.

No. C–87–4891 MHP.

United States District Court,
N.D. California.

Oct. 11, 1989.

Eliot Jubelirer, Marvin D. Morgenstein and Jonathan M. Perezous, Morgenstein & Jubelirer, San Francisco, Cal., for plaintiff.

James Quinn, Janice Kerr and J. Calvin Simpson, California Public Utilities Com'n, San Francisco, Cal., for defendants.

## SUPPLEMENTAL OPINION

PATEL, District Judge.

Plaintiff, a nationwide small package express delivery service, brought this action seeking a declaration that California Public Utilities Code §§ 486–496 are unconstitutional as an impermissible burden on interstate commerce under the Commerce Clause and as preempted by the Airline Deregulation Act ("the Act"), 49 U.S.C. App. § 1305. Plaintiff also seeks an injunction preventing defendants from enforcing regulations promulgated pursuant to state statutory authority. By order of March 30, 1989, the court granted defendants' motion for summary judgment with respect to the preemption issue and ordered additional briefing on the burden on interstate commerce issue. 716 F.Supp. 1299 (N.D.Cal.1989).

The case is now before the court on cross-motions for summary judgment. Having considered the submissions of the parties, for the following reasons, the court grants defendants' motion for summary judgment on the interstate commerce issue.

## BACKGROUND

The factual background of this case was discussed extensively in the court's order of March 30, 1989, and is not repeated here. Briefly stated, the remaining issue is whether or not California Public Utilities Code ("CPUC") regulations governing the portion of Federal Express business which is conducted intrastate and solely by truck unconstitutionally burden interstate commerce. The challenged regulations apply to areas including financial reporting, capitalization, insurance and safety.

In its order of March 30, the court asked the parties to address three questions: 1) whether Federal Express can identify, *after* packages have been shipped, those packages that have traveled solely by truck in California; 2) whether the CPUC regulations would pose an unreasonable burden if Federal Express were required to estimate the number of packages which have traveled solely in interstate commerce; and 3) which public benefits derive from the CPUC regulations at issue.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (if the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

## DISCUSSION

■ When state regulations arguably affect commerce among states, the Commerce Clause of the United States Constitution (Art. I, § 8, cl. 3) is implicated. Federal Express argues that the application of CPUC regulations to its intrastate ground operations places an unconstitutional burden on interstate commerce in violation of the Commerce Clause. If a regulation op-

erates even-handedly and creates only incidental effects upon interstate commerce, it passes constitutional muster unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); *see also Burlington N.R.R. Co. v. Dep't of Pub. Serv. Regulation*, 763 F.2d 1106, 1114 (9th Cir.1985) (challenger to state regulation must show that it "impedes substantially the free flow of commerce from state to state").

### A. *Burdens Imposed by the CPUC Regulations*

Federal Express contends that enforcement of the CPUC regulations will place an unreasonable burden on interstate commerce because the regulations will increase operating costs, result in delays in delivery times and reduce operating, pricing and discount flexibility. The CPUC counters that Federal Express' scenario of burdens is unfounded and that CPUC regulation of Federal Express is reasonable and tailored to Federal Express' existing method of operation.

First, Federal Express asserts that it cannot determine at the time of package pick-up whether a package from a location in California will move solely by ground transportation or partially by air. According to plaintiff, this inability to segregate packages before shipment will require it to comply with the CPUC financial and other requirements for all California shipments, even those which do not travel only by intrastate ground transportation. It further contends that its "state of the art" tracking system does not enable it to collect information regarding the mode(s) of transportation taken after packages are delivered. Lawrence Supp.Dec. paras. 3, 5–6; Nehls Dec. paras. 3–4. However, an earlier declaration submitted by plaintiffs indicated that "it is conceivable to scan trucks which are unloading to record which packages were in a truck." Lawrence Dec. para. 5. This declaration also stated that Federal Express was planning to change its system to allow tracking of truck routes. *Id.* para. 6.

Plaintiff now asserts that the development of post-delivery scanning which would identify transportation modes will require several years of research and the expenditure of an estimated $10–20 million. Lawrence Supp. Dec. para. 6; Nehls Dec. para. 4 (stating that under current system post-transportation scanning would not provide accurate data). Federal Express also states that post-delivery scanning would slow down services. Lawrence Supp. Dec. para. 6; Nehls Dec. para. 3. Although defendants doubt the accuracy of Federal Express' representations on this issue, they offer no evidence that the declarations are false or inaccurate. Since the record is uncontradicted, the court accepts as true plaintiff's assertions concerning the difficulty of post-delivery scanning under the current system.

Second, the parties addressed the feasibility of Federal Express providing the CPUC with estimates of packages and the mode of transportation, and paying fees in accordance with this arrangement. Plaintiff argues: 1) that estimating the number of packages that are carried by ground transportation within California would not relieve Federal Express of the burden of other CPUC general orders and regulations and 2) that Federal Express cannot be assured that CPUC will not refuse to accept estimates in the future.

As to the second contention, the court notes that counsel for the CPUC, at the hearing on September 26, 1988, stated that the CPUC will accept estimates of the number of packages shipped by Federal Express solely by ground transportation in California in order to assess quarterly transportation rate fund fees. Indeed, during the calendar years 1985 and 1986 and through the first quarter of 1987, Federal Express paid quarterly operating fees to the CPUC under a formula arrived at by the CPUC and apparently agreed to by the plaintiff. Diani Aff. paras. 7, 14 and Exs. B–E appended thereto. These fees were paid by Federal Express and accepted by the CPUC on the basis of estimates. Furthermore, the payment of these estimated fees apparently did not jeopardize plain-

tiff's profits. During the period when Federal Express paid estimated quarterly fees to the CPUC, its revenues increased steadily in California and throughout the United States (with the exception of a small decline in California revenues in the first quarter of 1987). *Id.* para. 15 and Ex. D attached. The method of allowing Federal Express to pay estimates thus appears to have worked reasonably well in the past. Since there is no dispute that the CPUC will now allow Federal Express to pay estimated fees, the court need not speculate whether such arrangements will be permitted in the future.[1]

Plaintiff also argues that paying estimated taxes would not relieve it of the unreasonable burden imposed by other PUC orders governing its operations such as rates, rate changes, refunds, and claims procedures. *See* Tucker, Bledsoe, Lawrence, Christensen, Allen, Sherman, Germano and McNeal Decs.; Plaintiff's Supp. Memo, Ex. 4H. According to plaintiff, Federal Express cannot segregate packages flown by air from those carried by truck. Plaintiff declares that, even if Federal Express could separate packages according to the type of transportation used, it would not be feasible to distinguish between packages carried across state lines and those transported only within California. Federal Express depicts a scenario in which CPUC regulations would force the corporation to assume that all packages, whether carried by air or by ground, or across state lines or within California, qualify for CPUC regulation. Such action allegedly would impinge upon interstate commerce by forcing uniformity across the states.

Federal Express' picture must be moderated by a touch of realism. Plaintiff contends that five different general orders issued by the CPUC affect its intrastate truck operations. With regard to at least one order, the rate justification provision, the CPUC has allowed Federal Express to charge rates for intrastate carriage within California that are identical to its other rates. Defendants' Supp. Memo, Attachment 2 at 2, 9–10. The CPUC asserts that it will grant variances for the cost justification requirements as well as the other general orders to which Federal Express objects. *Id.* at 2–10.

Federal Express relies on *Brown–Forman Distillers v. New York State Liquor Auth.*, 476 U.S. 573, 582 n. 5, 106 S.Ct. 2080, 2086 n. 5, 90 L.Ed.2d 552 (1986) and *In re Beer Institute*, 849 F.2d 753, 760 (2d Cir.1988), *aff'd sub nom. Healy v. Beer Institute*, —— U.S. ——, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989) for the proposition that constitutional rights cannot be made dependent on the discretion of a state agency. However, *Brown–Forman* and *Healy* involved entirely different facts than are presented here. In *Brown–Forman*, the Court struck down a New York liquor statute which required that every producer affirm that the prices charged for every bottle of liquor sold in New York did not exceed that charged in any other state during the same month. 476 U.S. at 582–583, 106 S.Ct. at 2086. *Healy* invalidated the Connecticut statute which contemporaneously controlled liquor prices relative to other states, and which restricted a brewer's ability to offer volume discounts. 109 S.Ct. at 2502–2503. In both *Brown–Forman* and *Healy,* the Court invalidated liquor statutes because their regulation of liquor prices had an extraterritorial effect and produced a pricing gridlock on a regional and even national level. *See Healy,* 109 S.Ct. at 2501–2503 (discussing unconstitutional effects).

■ *Healy* articulates a three part test for evaluating the extraterritorial effect of state regulation: 1) whether the state statute applies to commerce wholly outside the state's borders; 2) whether a statute has the "practical effect" of controlling conduct outside a state's borders; and 3) how the statute affects legitimate regulations

---

1. Plaintiffs protest that the CPUC policies have not been consistent, but the court finds that any prediction of future harm is entirely speculative at this point. Thus, any claim advanced by plaintiffs premised on the possibility that CPUC may reject estimates in the future does not meet the case or controversy requirement of Article III of the United States Constitution. *See, e.g., O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (discussing ripeness).

imposed by other states, and what impact would be created if other states enacted similar legislation. 109 S.Ct. at 2499. Applying this test to the instant case, the court finds that the CPUC regulations do not apply to commerce outside California, nor has there been any evidence that CPUC regulations will have the practical effect of controlling commerce outside California. Plaintiff has made no showing that CPUC regulations will conflict with other states' regulations, nor is there any suggestion that the CPUC regulations will create an economic gridlock in the transportation industry.[2]

One further distinction merits discussion. In *Healy,* the Court also found the Connecticut statute unconstitutional because the liquor statute applied only to brewers engaged in interstate commerce. 109 S.Ct. at 2501. Here the opposite situation is true: the CPUC is attempting to regulate the intrastate ground operations of Federal Express in the same manner that it currently regulates other intrastate ground transportation. Rather than seeking equal treatment with intrastate companies, Federal Express is actually seeking more favorable treatment than is received by those carriers operating solely in California.

As to the contention that variances (which plaintiffs prefer to call exemptions) will not necessarily be forthcoming from the CPUC, it is not clear whether such variances were previously granted when Federal Express was paying estimated quarterly fees. Moreover, plaintiffs have presented no concrete evidence of harm that would result if such variances were not given.

### B. *Benefits of CPUC Regulations*

Against this meager showing of burdens resulting from the CPUC regulations, the court balances the benefits allegedly derived from the regulation. Federal Express contends that the regulations provide no public benefits. To support this position, it cites testimony before the CPUC and a CPUC staff report expressing the need to reform the California regulatory system to benefit the ratepayers.

On the other hand, the CPUC asserts that its regulations help protect consumers, promote highway safety, and benefit the state economy. Smith Aff. They also stress that in 1988 the California legislature gave the CPUC greater responsibility for monitoring vehicle maintenance and driver qualifications. Cal.Pub.Util.Code §§ 1063.5, 3553, 3557 (West Supp.1989). Moreover, the CPUC points out that the payment of quarterly fees finances its highway safety and maintenance programs.

Plaintiff's evidence does not tend to show that the CPUC regulations provide no public benefit, nor that its functions are merely superfluous.[3] As demonstrated by

---

**2.** With respect to other state statutes and regulations, including those administered by the CPUC, the supplemental summaries submitted by the parties show these requirements do not unreasonably burden interstate commerce. Many of the regulations are similar to or less onerous than comparable federal regulations. Others impose burdens only to the extent that the activities are intrastate. In the latter case, the regulations go to matters ordinarily left to state regulation, such as driver safety, vehicle safety, and protection of state citizens' interests.

**3.** For instance, plaintiff attempts to rely upon excerpts from the Proposed Decision of the Administrative Law Judge in the Regulation of General Freight Transportation by Truck, No. I.88–08–046. *See* Plaintiff's Letter Brief, dated July 3, 1989 (containing excerpts from Proposed Decision). The proposed decision recommends flexibility in rate regulation, Proposed Decision at 80, and states that "the most effective way to improve safety is through direct safety regulation and enforcement." *Id.* at 58–59. On the other hand, the proposed decision also states that, while other state agencies bear direct responsibility for safety regulation, the CPUC "has an indirect, but equally important, role of cooperating with these agencies when Commission regulated carriers are involved." *Id.* at 63. The functions CPUC shares with other state agencies include: 1) suspending or revoking unsafe carriers' operating authority; 2) listing carrier equipment; and 3) listing owner-operators and drivers' licenses. *Id.*

Furthermore, the organizational charts submitted by both parties indicate that there is considerable coordination between the CPUC and state agencies such as the California Highway Patrol (CHP) and the Department of Motor Vehicles, as well as between CPUC and the Interstate Commerce Commission. However, the summaries show in many instances that the

the above legislation, the California state legislature clearly views CPUC enforcement of safety regulations as a significant public benefit. Furthermore, the United States Supreme Court has noted that "the question of safety ... is essentially a matter of public policy, and public policy can, under our constitutional system, be fixed only by the people acting through their elected representatives." *Bhd. of Locomotive Firemen and Eng'rs v. Chicago, Rock Island and Pacific R.R. Co.,* 393 U.S. 129, 138, 89 S.Ct. 323, 328, 21 L.Ed.2d 289 (1968) (upholding numerical requirements for train crew members against Commerce Clause and equal protection challenge).

Additionally, in *Raymond Motor Transp., Inc. v. Rice,* 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978), the Supreme Court declared:

> [T]he Court has been most reluctant to invalidate under the Commerce Clause "state legislation in the field of safety where the propriety of local regulation has long been recognized." ... In no field has this deference to state regulation been greater than that of highway safety regulation.... Thus, those who would challenge state regulations said to promote highway safety must overcome a "strong presumption of [their] validity."

*Id.* at 443–44, 98 S.Ct. at 795 (citations omitted).[4]

In the instant case, the court finds that plaintiffs have not overcome the strong presumption of the validity of the CPUC regulations.

CONCLUSION

Plaintiffs have failed to carry their burden of proof with regard to their interstate

commerce argument. On the other hand, defendants have shown that the CPUC regulations do not constitute an unreasonable burden. Defendants are therefore GRANTED summary judgment on the interstate commerce clause issue. Plaintiff's motion for summary judgment is DENIED.

There being no remaining issues, this case is hereby DISMISSED.

IT IS SO ORDERED.

---

CPUC does not duplicate, but complements activities of these other agencies. *See, e.g.,* Cal. Pub.Util.Code § 3631.5 (requiring liability insurance for motor carriers hauling hazardous materials, who have been licensed by the CHP); Cal.Pub.Util.Code § 3553 (requiring new holders to show that they can meet CHP safety standards).

4. State highway regulations merit special deference because the burden of nondiscriminatory regulations generally falls on local economic interests, and because the states bear primary responsibility for policing highway conditions. *Raymond Motor Transp.,* 434 U.S. at 444 n. 18,

98 S.Ct. at 795 n. 18. Nevertheless, in *Raymond Motor Transp.,* the Court invalidated Wisconsin's regulations governing the length and shape of trucks. The Court found uncontradicted evidence that the regulations did not contribute to highway safety and concluded that the regulations significantly raised costs, slowed transportation, and prevented transfers from any of the thirty-three states where the prohibited trucks were legal. *Id.* at 444–445, 98 S.Ct. at 795–96. The record here is completely lacking in such evidence, regarding both the burdens and benefits of the regulations.