936 F.2d 1075
 FEDERAL EXPRESS CORPORATION, Plaintiff-Appellant,
v.
CALIFORNIA PUBLIC UTILITIES COMMISSION; Stanley W. Hulett;
Donald Vial; Frederick R. Duda; John B. Ohanian;
G. Michael Wilk; Victor Weiser;
Norman Kelley, Defendants-Appellees.
 No. 89-16444.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 14, 1991.
Decided June 25, 1991.
Dissenting Opinion June 27, 1991.
 
 Eliot S. Jubelirer, Morgenstein & Jubelirer, San Francisco, Cal., for plaintiff-appellant.
 James T. Quinn, California Public Utilities Com'n, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before BEEZER and NOONAN, Circuit Judges, and SINGLETON*, District Judge.
 NOONAN, Circuit Judge:
 
 
 1
 Federal Express Corporation (Federal Express) brought suit against the California Public Utilities Commission and individual named defendants (the PUC), seeking a declaration that regulations of the PUC, as applied to Federal Express, impose an unconstitutional burden on interstate commerce and are preempted by the Airline Deregulation Act, 49 U.S.C.App. Sec. 1305, and an injunction against the PUC enforcing them against Federal Express. On cross-motions for summary judgment, the district court found no preemption and no unconstitutional burden and entered judgment for the PUC. 723 F.Supp. 1379. We now reverse the district court and direct that judgment be entered for Federal Express.
 
 FACTS
 The following facts are undisputed:
 
 2
 Federal Express is an air carrier operating under the authority of the Civil Aeronautics Board as provided in subchapter IV of the Federal Aviation Act of 1958, 49 U.S.C.App. Sec. 1371. The carrier operates sixty Boeing 727 aircraft, twenty-one DC-10 aircraft, and more than one hundred specifically designed Cessna-208 aircraft. In planes operated, Federal Express is one of the largest airlines in the United States.
 
 
 3
 Federal Express is an "all-cargo" carrier, that is, it carries no passengers. It carries packages. The packages are picked up by van in the communities serviced, trucked to an airport, flown to a "hub" where they are sorted, put on other aircraft to their destinations, and trucked by van to their recipients. Federal Express' main hub is Memphis. Between midnight and two o'clock each morning over 700,000 packages are delivered, sorted, and re-routed at the Memphis facility.
 
 
 4
 Oakland, California is a regional hub in this system. Packages destined for ten western states are transported here, sorted, and sent on to their destinations. Over 200,000 packages each week are transported that have both their origin and destination in California. Packages collected at Oakland and bound for Los Angeles may be shipped there in three different ways: (1) to Memphis, back to Los Angeles; (2) directly to Los Angeles by air; (3) by truck from Oakland to Los Angeles. The trucks carry the packages in specially designed "aircraft containers." In the evening a single truck runs from Oakland to Los Angeles, and two trucks go from Los Angeles to Oakland carrying packages that do not fit on board the Oakland-bound night flight. In the morning one truck goes from Oakland to Los Angeles and one from Los Angeles to Oakland carrying second day delivery packages that do not make the evening flight. Most of the packages in any truck are packages in interstate commerce; some carry exclusively interstate packages.
 
 
 5
 Federal Express guarantees delivery by 10:30 a.m. the day after a package has been picked up. There is a full refund if a package is even one minute late. To keep this schedule, even the most minor delays must be avoided, and Federal Express must be prepared to meet changing weather, mechanical breakdowns, and varying conditions at airports. As the system operates as an integrated whole, a delay of even one half-hour at an airport may affect thousands of packages at the Memphis sorting point. The system would not achieve its goal of certain, speedy service without backup equipment and alternative modes of transportation. In particular, as far as Federal Express's California operations are concerned, the choice of one of the three modes of transportation from Oakland to Los Angeles depends on air traffic, control delays, weather, aircraft availability, and the volume of packages in the entire system.
 
 
 6
 As trucks are an essential component of the system, Federal Express operates over 2,600 trucks in California. The trucks are licensed to use the highways by the PUC. Up until early 1987 Federal Express also paid a quarterly fee assessed by the PUC on its estimated gross operating revenue under Cal.Pub.Util.Code Sec. 5003.1.
 
 
 7
 The PUC is an agency of the state of California with authority to regulate common carriers on the highways of California. California Constitution, Art. XII; Sec. 4, Cal.Pub.Util.Code Secs. 1063 and 3501 et seq. (West 1975 & Supp.1991). Under the statutory authority conferred by Public Utility Code Secs. 486-496 the PUC has issued orders governing the tariffs of common carriers, General Order 80-C, February 7, 1990; for the suspension of the tariffs, General Order 113-B, July 2, 1980; and for their public inspection, General Order 139, September 1, 1976. The PUC regulates the terms of the bills of lading, the freight bills and "accessorial services" documents issued by the carriers, General Order 135, March 1, 1987. The PUC provides a procedure by which carriers may obtain variances from its orders. The PUC has represented to the court that its regulatory program is "flexible" and "adaptive."
 
 PROCEEDINGS
 
 8
 On September 23, 1987 Federal Express brought this action in the district court with the results stated above. Federal Express appeals.
 
 ANALYSIS
 
 9
 Federal Express appeals both on the ground that the state regulation excessively burdens interstate commerce and on the ground that state regulation is preempted by act of Congress. We need not and do not consider the first ground as we find statutory preemption exists. As this legal conclusion is dispositive, there is no need for further proceedings in the case other than entry of judgment.
 
 
 10
 In the section on federal preemption, the Airline Deregulation Act of 1978 provides as follows:
 
 
 11
 Except as provided in paragraph (2) of this subsection, no State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.
 
 
 12
 49 U.S.C.App. Sec. 1305(a)(1) (1988). The exception provided in subsection (2) is air transportation wholly within the state of Alaska. It has no application here.
 
 
 13
 Federal Express is an air carrier having authority under subchapter IV, 49 U.S.C.App. Sec. 1371, to provide air transportation. The PUC is seeking to impose regulations with the effect of law on its services. Q.E.D.--federal preemption is required by a federal statute that expressly preempts state regulation.
 
 
 14
 Our cases, however, have not read the statute quite so literally or without attention to the context of other law into which the statute fits. Thus we have taken into account the presumption against preemption when Congress legislates in the fields of common law tort and contract. See California v. ARC America Corp., 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989); West v. Northwest Airlines, 923 F.2d 657, 659 (9th Cir.1991). While preemption has been enforced against a claim based on a state statute regulating access to transportation, an accompanying tort claim for the intentional infliction of emotional harm was held to be unpreempted. Hingson v. Pacific Southwest Airlines, 743 F.2d 1408, 1415-16 (9th Cir.1984).
 
 
 15
 In a closer case we have also recognized that a California regulation against the recording of telephone conversations without warning could be applied to an airlines' reservation system and was not preempted. Air Transport Ass'n v. Public Util. Comm'n, 833 F.2d 200, 207 (9th Cir.1987), cert. denied, 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988). Indeed, the district court relied on this decision in making its decision in the instant case. But we did inject the caution in Air Transport: "This is not, however, an appropriate case for the definitive resolution of the scope of federal preemption under the Deregulation Act." Id. The regulation in question was construed to relate to neither rates nor routes nor services of an air carrier. Id.
 
 
 16
 Air Transport should be understood as allowing the state to act in an area of non-economic regulation--to impose a general rate for the protection of telephone users without carving out an exception for air carriers. In the same way it is uncontested in this case that the general traffic laws of California and its safety requirements for trucks on its highways apply to Federal Express; only economic regulation is challenged. In short, despite the very broad and apparently all-inclusive language of the statute, common sense and common practice have forbidden that the statute be taken literally and have restricted its range. Interpreted in terms of its purpose and in the context of other laws, the Airline Deregulation Act as it applies in this case preempts action by the state that regulates the rates and terms of service offered by an air carrier.
 
 
 17
 The trucking operations of Federal Express are integral to its operation as an air carrier. The trucking operations are not some separate business venture; they are part and parcel of the air delivery system. Every truck carries packages that are in interstate commerce by air. The use of the trucks depends on the conditions of air delivery. The timing of the trucks is meshed with the schedules of the planes. Federal Express owes some of its success to its effective use of trucking as part of its air carrier service.
 
 
 18
 The PUC's regulation of rates, of discounts and promotional pricing, of claims, of overcharges, of bills of lading and freight bills, and its imposition of fees enters the zone that Congress has forbidden the states to enter. Its regulatory scheme does not restate common law principles of tort and contract. Its regulatory scheme goes far beyond safety on highways. Most of the regulations challenged here are obviously economic--they bear on price. Those regulations which are not patently economic--the rules on claims and bills of lading, for example--relate to the terms on which the air carrier offers its services. Terms of service determine cost. To regulate them is to affect the price. The terms of service are as much protected from state intrusion as are the air carrier's rates.
 
 
 19
 Our reading of the plain words of the statute is confirmed by consideration of the purposes of the Airline Deregulation Act and the Federal Aviation Act of 1958. The aim of federal preemption is to prohibit a state "from enacting any law, establishing any standard determining routes, schedules, or rates, fares, or charges in tariffs of, or otherwise promulgating economic regulations, for any air carrier certified by the Board." H.Conf.Rep. No. 1779, 95th Cong., 2d Sess. 94, reprinted in 1978 U.S.Code Cong. & Admin.News 3737, 3773, 3804. The Federal Aviation Act of 1958 confided to federal authority the "promotion of adequate, economical, and efficient service by air carriers at reasonable charges," 49 U.S.C. Sec. 1302(c). Amending the 1958 act in 1977, Congress specifically required "a sound regulatory environment" where decisions, "reached promptly," "facilitate adaptation of the air transportation system to the present and future needs of the domestic and foreign commerce of the United States," 49 U.S.C.App. Sec. 1302(a)(5). In particular, in 1977, Congress sought the "encouragement and development of an expedited all-cargo air service system," 49 U.S.C.App. Sec. 1302(b)(1), and Congress sought under the same heading, "Factors for all-cargo air service," the "encouragement and development of an integrated transportation system," 49 U.S.C.App. Sec. 1302(b)(2).
 
 
 20
 Federal Express is exactly the kind of an expedited all-cargo service that Congress specified and the kind of integrated transportation system that was federally desired. Because it is an integrated system, it is a hybrid, an air carrier employing trucks. Those trucks do not destroy its status as an air carrier. They are an essential part of the all-cargo air service that Federal Express innovatively developed to meet the demands of an increasingly interlinked nation. Congress has freed it from the constrictive grasp of economic regulation by the states.
 
 
 21
 REVERSED and REMANDED with instructions to enter judgment for the plaintiffs granting the injunctive relief requested.
 
 
 22
 SINGLETON, Jr., District Judge, dissenting.
 
 
 23
 Congress has preempted state regulation of certain activities of air carriers. The statute provides in part:
 
 
 24
 [N]o state or political subdivision thereof [except Alaska] ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.
 
 
 25
 49 U.S.C.App. Sec. 1305(a)(1) (1988). In this case we are asked to apply this statute to the operations of Federal Express Corporation (Federal Express), a conceded air carrier. We must determine whether Congress intended to preempt state economic regulation of Federal Express's transportation of cargo exclusively by truck and exclusively within the borders of California. I am of the view that Congress did not intend to preempt state regulation of Federal Express's purely intrastate trucking business and therefore dissent from this court's decision.
 
 
 26
 This case turns on the meaning of certain phrases in the applicable statute. In order to determine the scope of the statute we must determine whether California's threatened economic regulations "relat[e] to rates, routes, or services of any air carrier [authorized by federal law] to provide air transportation." Clearly Congress intended to exempt activities pertaining to setting rates, determining routes, and providing services of an air carrier necessary to provide air transportation.[1] It would appear equally clear that Congress did not intend to exempt activities of an air carrier that were not related to the provision of air transportation.[2]
 
 
 27
 In determining which activities are exempt and which are not, it is useful to consider an analogy to the insect kingdom. All caterpillars have the potential of becoming butterflies and flying above the earth. However, many caterpillars succumb before metamorphosis and live their entire lives earthbound. If we analogize packages to insects, this case is about caterpillars and not butterflies.[3]
 
 
 28
 California's concessions make this an easy case. The state recognizes that in order to transport goods by air it is necessary to get them from a collection point to an airplane and that state economic regulation of incidental truck traffic is preempted. The state also implicitly concedes that if Federal Express picks up a package in Memphis, flies it to Oakland, and transports it by truck to Los Angeles, the entire trip, including the ground leg, is preempted from state regulation. Thus California makes no claim to regulate commerce carried wholly or partly by airplane. See 49 U.S.C.App. Sec. 1301(10) and (24) (1988).
 
 
 29
 California seeks to regulate the carriage of only those packages that never see the interior of an airplane. I see nothing in the cited statute that preempts California from doing so. It seems clear to me that transporting packages solely by truck within California is not a service of an air carrier authorized to provide air transportation.
 
 
 30
 The majority never explains how the carriage of goods by land is somehow transformed into the carriage of goods by air.[4] Federal Express has a number of arguments. It contends the statute exempts any service performed by an air carrier, and concludes that it is primarily an air carrier and so any transportation activity it conducts automatically becomes exempt.[5] Thus, if Federal Express diversifies into the florist or pizza business in San Francisco and uses its fleet of trucks to deliver flowers or pizza in the Bay Area, presumably the selling of flowers or pizza become activities preempted from state regulation whether airplanes play any part in the delivery or not. I cannot accept this argument and I do not believe the majority intends its decision to extend this far.[6]
 
 
 31
 Federal Express's primary argument is that its business is so integrated that it would be inconvenient to segregate land packages from air packages. In fact Federal Express maintains that no one ever knows until the last minute whether a given package will be flown or driven to its intrastate destination. To accept this argument is to confuse Federal Express's other commerce clause arguments with its preemption arguments. Federal Express's unilateral decision to mix its intrastate carriage of goods by truck with the carriage of other packages taken from airplanes cannot transform purely ground transportation into air transportation.
 
 
 32
 The majority may be influenced by the fact that only a small percentage of the packages currently carried by Federal Express trucks really qualify as caterpillars. On this record, the overwhelming majority appear to be butterflies. We must recognize, however, that nothing is static in the highly competitive transportation industry. The majority's decision will free the trucking business of Federal Express from any state economic regulation. This will open the door for substantial increases in Federal Express's trucking business and give it a substantial competitive advantage over trucking companies that must comply with state regulation. The majority really does not set out a rationale for determining when an air carrier's ground transportation loses its quality as air transportation. The majority decision could be read as exempting any transportation services Federal Express wishes to provide. The majority does not tell us how many airplanes Federal Express must fly to Sacramento each month, in order to insulate daily truck traffic between Oakland and Sacramento from state regulation. Will one Cessna 208 carrying three packages between Oakland and Sacramento authorize Federal Express to send a dozen trucks packed with goods between the two cities free of state regulation? The majority does not address packages deposited on the San Francisco peninsula for delivery in the East Bay that never see an airplane. In my view, we should apply the plain language of the statute.[7] Federal Express's air transportation services, including land transportation incidental thereto, are exempt from state regulation while its exclusively intrastate land transportation services are not exempt from state regulation. If the two overlap, we are presented with general commerce clause concerns not preemption concerns.
 
 
 33
 The majority finds preemption and therefore has no need to address Federal Express's other commerce clause arguments. The trial court essentially found that the commerce clause challenges were not ripe for resolution until Federal Express sought and was denied state exemptions. In the trial court's view until we know how California actually applies its regulatory system to Federal Express's business, it is premature to decide the commerce clause issues. This view seems plausible to me but the state only reluctantly endorsed it after much prodding at oral argument.[8]
 
 
 34
 If we were to conclude that all the commerce clause issues were ripe for adjudication and elect to decide those issues now, I would be reluctant to do so on a summary judgment record. I do not believe that all material facts are undisputed. I would much prefer to give the parties their day in court and then have the trial court address each of Federal Express's contentions in carefully fashioned findings of fact. See Fed.R.Civ.P. 52. I therefore respectfully dissent and favor affirming the trial court's decision on the preemption issue but remanding on other commerce clause issues for findings of fact and conclusions of law after a full hearing on the merits.
 
 
 
 *
 The Honorable James K. Singleton, United States District Judge for the District of Alaska, sitting by designation
 
 
 [1]
 Congress defines an "air carrier" as a citizen of the United States engaging in "air transportation." 49 U.S.C.App. Sec. 1301(3) (1988). Congress defines "air transportation" in part as "interstate" transportation by aircraft. 49 U.S.C.App. Sec. 1301(10). "Interstate air commerce" means "the carriage by aircraft of ... property for compensation ... whether such commerce moves wholly by aircraft or partly by aircraft and partly by other forms of transportation." 49 U.S.C.App. Sec. 1301(23)
 California apparently does not contend that these definitions restrict the exemption in section 1305 to state regulation of interstate transportation of goods by aircraft, nor does it contend that the statute permits state regulation of intrastate carriage of goods by air. It does argue, however, that by defining "air transportation" to include goods carried in part by aircraft and in part by trucks, Congress did intend to permit state regulation of goods carried exclusively by truck.
 
 
 [2]
 For purposes of analysis it is useful to refer to those activities which Congress chose not to regulate and which it preempted the states from regulating as exempt activities. Those activities which the states are free to regulate will be called nonexempt activities
 
 
 [3]
 Parcels which are carried at some point in an airplane for brevity will be called air packages. Those parcels that never see the inside of an airplane will be called land packages. By analogy air packages would be butterflies and land packages caterpillars. It might be more apt to call them dead caterpillars because if they reach their destination without ever entering an airplane they never will become butterflies
 
 
 [4]
 The majority never expressly discloses its reasoning. The majority opinion describes Federal Express's air transportation activities. It argues a point that California concedes, that Congress would frown on attempts to regulate air transportation. It finesses the question presented here whether transportation of land packages is exempt from regulation. It distinguishes certain cases. It pursues another point conceded by California, that transportation of air packages in Federal Express trucks is exempt and it concludes with a paean to deregulation of air carriers. Implicit in the opinion is the assumption that Federal Express has so integrated its business by including both air packages and land packages in each truck, that California's attempts to regulate the latter necessarily regulates the former. If this is the rationale, then the holding would be that anytime an industry intermixes exempt and nonexempt activities neither can be regulated by the state. If the United States Supreme Court or this court had ever previously so held, those decisions should be cited rendering the majority's opinion unassailable. The majority cites no cases for this proposition, however. Rather, it seeks to distinguish prior decisions of this court which held that state regulation of activities which were clearly "services of an air carrier" were not preempted. Even if we accept the distinction the majority draws between "economic" and "non-economic" regulation, a troublesome distinction in context, the distinction does not advance the majority's decision. The fact that regulation of some "air services" is not preempted does not support a holding that services that have no connection with "air transportation" are preempted
 
 
 [5]
 Federal Express errs in my view by focusing on the term "services" in the statute and ignoring the context "of an air carrier authorized to provide air transportation." In context, it is clear that only "air services", by which I mean services constituting air transportation, are exempt
 
 
 [6]
 The majority might respond to the "pizza" example by echoing Justice Holmes famous riposte "not ... while this court sits." Panhandle Oil Co. v. Mississippi ex rel. Knox, 277 U.S. 218, 223, 48 S.Ct. 451, 453, 72 L.Ed. 857 (1928) (Holmes, J., dissenting). While unwilling to formulate a principle that would distinguish "air services" from other potential services of an air carrier, the majority might recognize a point at which ground services were so divorced from air services that economic regulation of the former would not impede performance of the latter. Compare Justice Stewart's test for obscenity "I know it when I see it." Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring)
 This approach is flawed in my view because it does not guide the trial bench and the bar in deciding other cases. My proposed resolution has the advantage of providing a bright line rule.
 
 
 [7]
 Miners search for gold in creek beds and frequently are mislead by pyrites. Judges search for plain meanings in statutes and are frequently mislead by a mirage. A claim that any statute has a "plain meaning" is at the very best an overstatement. More often it begs the question to be answered. My view of the statute at least finds support in its context and if we look beyond immediate context my reading of the statute finds support in Congresses purpose as disclosed in the language used in the statutes governing air carriers as a whole
 
 
 [8]
 The state prefers to argue that even if all of Federal Express's factual assertions are accepted as true, Federal Express has not sustained its burden under the standards articulated in Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). I am unpersuaded that Federal Express's other commerce clause arguments can be resolved as a matter of law