**Russell WHITTEN, Appellant,**

v.

**VEHICLE REMOVAL
CORP., Appellee.**

No. 05-00-00531-CV.

Court of Appeals of Texas,
Dallas.

Aug. 10, 2001.

Jose Padilla Lopez, IV, Lopez & Grantham, Dallas, for Appellant.

James C. Mosser, Byron Kevin Henry, of James C. Mosser, Inc., Dallas, for Appellee.

Before Justices JAMES, WRIGHT, and RICHTER.

## OPINION

JAMES, Justice.

After appellant Russell Whitten's car was towed from his apartment complex, he sued the towing company, appellee Vehicle Recovery Corp. (VRC). The trial court rendered a take-nothing judgment on all of Whitten's claims. In two issues, Whitten generally contends the trial court erred in ruling that his cause of action pursuant to the Texas Transportation Code is

preempted by federal law. In a third issue, Whitten complains the court erred in granting VRC's motion for judgment notwithstanding the verdict on Whitten's contract claim. We affirm.

## BACKGROUND

While Whitten was on a trip in California, VRC towed Whitten's car from his apartment complex in Irving, Texas. VRC claimed it towed the vehicle at the direction of the apartment manager in an effort to rid the complex of illegally parked cars. Whitten's vehicle had an expired safety inspection sticker. Signs were posted on the property stating that vehicles which had invalid registration or inspection stickers would be towed at the owner's expense.

Whitten claimed his car was parked legally and was wrongfully towed without his consent. Whitten sued VRC in justice court, asserting numerous causes of action, including a claim generally alleging VRC failed to comply with chapter 684 of the Texas Transportation Code regulating certain towing practices.[1] Whitten sought recovery for various alleged damages, including: compensation for losing the use of his vehicle; towing and storage charges incurred in recovering his vehicle; additional damages available pursuant to chapter 684 of the Texas Transportation Code for intentional, knowing, or reckless violations of the statute; punitive damages; and attorney's fees. VRC defaulted in the justice court and pursued a de novo trial in the county court. *See* TEX. R. CIV. P. 591.

Whitten amended his petition in the county court and reasserted many of the same claims, including the chapter 684 claim, a DTPA claim, a claim for deprivation of constitutional rights under the Texas Constitution, and various common law

causes of action sounding in both tort and contract. VRC filed a plea to the jurisdiction alleging all of Whitten's causes of action, except for a breach of contract claim, were preempted by federal law. The trial court granted the motion as to all of the challenged claims except for two claims alleging breach of an implied bailment agreement and recovery for money had and received. These two claims, along with the unchallenged breach of contract claim, were tried to a jury. After Whitten closed his evidence at trial, the court granted VRC's motion for directed verdict on the claims for bailment and money had and received. The trial court allowed Whitten's remaining claim for breach of contract to go to the jury on a third-party beneficiary theory. On this claim, the jury returned a verdict for Whitten in the amount of $3,500, plus $7,750 in attorney's fees. Following the verdict, the trial court granted VRC's motion for judgment not withstanding the verdict and rendered judgment that Whitten take nothing. This appeal ensued.

## PREEMPTION

In his first two issues, Whitten challenges the trial court's ruling sustaining VRC's plea to the jurisdiction that Whitten's claim pursuant to chapter 684 of the transportation code is preempted by federal law. Specifically, Whitten contends the trial court erred in determining that the regulation of non-consensual, intrastate towing of vehicles is preempted. Alternatively, Whitten contends that even if intrastate towing regulation is generally preempted by federal law, chapter 684 falls within an exception excluding state safety regulation from federal preemption. We note that nowhere in his appellate brief does Whitten complain of the dismissal of his common law tort claims,

---

1. Whitten did not allege in what way VRC allegedly failed to comply with chapter 684.

DTPA action, or other claims which the trial court dismissed pursuant to VRC's plea to the jurisdiction. Nor does he complain about the trial court's directed verdict dismissing his causes of action for bailment and money had and received. Accordingly, we limit our review of the trial court's preemption ruling to the single preemption issue Whitten complains of on appeal: whether his statutory cause of action pursuant to chapter 684 of the Texas Transportation Code is preempted by federal law. We conclude that it is.

■■■■■ Preemption is an affirmative defense. *Harrill v. A.J.'s Wrecker Serv., Inc.*, 27 S.W.3d 191, 194 (Tex.App.—Dallas 2000, pet. dism'd w.o.j.). The burden of demonstrating preemption is on the party who asserts it. *Boon Ins. Agency, Inc. v. Am. Airlines, Inc.*, 17 S.W.3d 52, 55 (Tex. App.—Austin 2000, pet. denied) (citing *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 255, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984)), *cert. denied*, 531 U.S. 1113, 121 S.Ct. 858, 148 L.Ed.2d 772 (2001). Most commonly, a preemption issue is resolved in the trial court through a motion for summary judgment. *See, e.g., Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex.2000). VRC, however, raised the preemption issue in a plea to the jurisdiction.[2] Ordinarily, a plea to the jurisdiction is not the proper vehicle for resolving preemption issues. *See Harrill*, 27 S.W.3d at 195 n. 1 (noting that because plaintiff pled facts to establish a cause of action under chapter 684 of the transportation code, defendant's plea to the jurisdiction asserting preemption should not have been granted). Nonetheless, VRC contends that a plea to the jurisdiction was proper in this instance because the issue here is one of "choice of forum" preemption rather than "choice of law" preemption. *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 545–46 (Tex.1991) (noting that a preemption provision which affects the choice of forum is a non-waivable jurisdictional issue while a preemption provision which affects only the choice of law is an affirmative defense that may be waived); *see also HECI Exploration Co. v. Holloway*, 862 F.2d 513, 518–22 (5th Cir.1988) (analyzing ERISA choice-of-law preemption). We need not decide, however, whether VRC properly utilized a plea to the jurisdiction in this instance because Whitten did not object to the plea below, nor does he complain on appeal of any defect in the manner that the preemption issue was raised before the trial court. Therefore, any such error was waived. *See* TEX. R. APP. P. 33.1(a), 38.1(e); *see also Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex.App.—Dallas 1995, writ denied). Accordingly, we turn to the substantive issue before us.

Whether state regulation of intrastate, non-consensual tows is preempted by federal law has received considerable judicial attention in recent years. The usual fact pattern, however, has involved an action by towing companies alleging that various municipal regulations or other practices, particularly rotational towing programs,[3]

---

**2.** Although VRC's plea to the jurisdiction was actually entitled as a "Motion to Dismiss," both parties have referred to it as a plea to the jurisdiction, and in substance this characterization appears correct.

**3.** A rotational towing program consists of a list of tow truck operators maintained by a governmental body which it uses for requesting non-consensual and emergency tows. Tow operators rotate through the list as tows are allocated in turn to the next available operator. The governmental body typically establishes threshold standards for participating in the rotational pool. *See, e.g., Tocher v. Santa Ana*, 219 F.3d 1040, 1043 (9th Cir.2000), *cert. denied*, 531 U.S. 1146, 121 S.Ct. 1085, 148 L.Ed.2d 960 (2001). A rotational towing program may be implemented to prevent "wreck chasing," the practice of multiple tow trucks monitoring police radio frequencies and rac-

are preempted by title 49, section 14501(c)(1) of the United States Code.[4] *See, e.g., Tocher,* 219 F.3d at 1043 (tow truck operator challenged city ordinance establishing permit system and rotational towing program); *Cardinal Towing & Auto Repair, Inc. v. City of Bedford,* 180 F.3d 686, 689 (5th Cir.1999) (tow truck operator challenged city contract awarding city towing business to single company); *Ace Auto Body,* 171 F.3d at 768–69 (tow truck operators challenged city towing laws establishing rotational towing programs and other regulation); *R. Mayer of Atlanta, Inc. v. City of Atlanta,* 158 F.3d 538, 540-41 (11th Cir.1998) (tow truck operators challenged city ordinances regulating towing services within city limits), *cert. denied,* 526 U.S. 1140, 119 S.Ct. 1799, 143 L.Ed.2d 1026 (1999); *see also Fort Bend County Wrecker Assoc. v. Fort Bend County Sheriff,* 39 S.W.3d 421, 424 (Tex. App.—Houston [1st Dist.] 2001, no pet. h.) (tow truck association challenged rotational towing program and associated rules and regulations promulgated by sheriff as illegally promulgated and unconstitutional).

Although the courts in such cases generally have determined that intrastate towing services fall within the general provision preempting state law "related to a price, route, or service of any motor carri-er," courts have also found certain aspects of state and municipal regulation to be excepted from preemption. In particular, certain rotational towing programs have been found to be excepted under the market participant exception to the preemption doctrine.[5] *See Tocher,* 219 F.3d at 1049, 1052; *Cardinal Towing,* 180 F.3d at 691. Additionally, several courts have found state and local laws regulating towing to fall within a "safety regulation" exception provided by section 14501(c)(2)(A).[6] *See Tocher,* 219 F.3d at 1051–52 (finding two provisions of California Vehicle Code related to safety and therefore were not preempted); *Hott v. City of San Jose,* 92 F.Supp.2d 996, 1000 (N.D.Cal.2000) (finding regulation permitting revocation of permit for fraudulent business practices fell within safety exception and was not preempted); *Ace Auto Body,* 171 F.3d at 776 (finding requirements regarding licensing, information displays, reporting, record keeping, criminal history, insurance, posting bond, and maintaining storage and repair facilities all fell within safety or financial responsibility exemptions); *Harris County Wrecker Owners for Equal Opportunity v. City of Houston,* 943 F.Supp. 711, 732 (S.D.Tex.1996) (concluding, based on uncontroverted summary judgment evidence, that certain geographical service area restrictions were safety related); *People ex rel. Renne v. Servantes,*

---

ing one another to an accident scene in competition for business. *See, e.g., Ace Auto Body & Towing, Ltd. v. City of New York,* 171 F.3d 765, 768, 774 (2d Cir.1999), *cert. denied,* 528 U.S. 868, 120 S.Ct. 166, 145 L.Ed.2d 140 (1999).

4. Title 49, section 14501(c)(1) of the United States Code provides that no State or political subdivision thereof may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." *See* 49 U.S.C.A. § 14501(c) (1997). Unless other-wise stated, all section references in this opinion are to title 49 of the United States Code.

5. The "market participant" or "municipal-proprietor" exception to preemption applies when a government is acting in a proprietary capacity, such as when the government enters the market place to procure goods or services. *See Cardinal Towing,* 180 F.3d at 691.

6. This provision provides that the preemption provision in subparagraph (1) "shall not restrict the safety regulatory authority of a State with respect to motor vehicles. . . ." 49 U.S.C.A. § 14501(c)(2)(A) (1997).

86 Cal.App.4th 1081, 103 Cal.Rptr.2d 870, 880 (2001) (finding following provisions of San Francisco towing ordinance all fell within safety exception and therefore were not preempted: notification of police and written authorization for certain non-consensual tows; licensing, reporting, and record keeping scheme; and requirement that storage facilities accept a credit card).

When courts have determined that no exception is applicable, however, the challenged regulation typically has been deemed preempted. *See Tocher,* 219 F.3d at 1049 (finding municipal permit scheme and certain provisions of California Vehicle Code sounding in consumer protection not to fall within safety exception and therefore preempted); *R. Mayer,* 158 F.3d at 540–41, 548 (concluding municipal licensing scheme was preempted after finding state could not delegate its safety regulation authority to political subdivisions); *Northway Towing, Inc. v. City of Pasadena, Tex.,* 94 F.Supp.2d 801, 803–04 (S.D.Tex. 2000) (concluding city ordinances requiring permit and imposing storage requirements did not fall within safety exception and were preempted); *Cedar Bluff 24–Hour Towing v. City of Knoxville,* 78 F.Supp.2d 725, 728–30 (E.D.Tenn.1999) (after finding state could not delegate its safety regulation authority to political subdivisions, concluding municipal permit scheme was preempted except for provisions creating city wrecker commission and setting price for storage and winching services); *Petrey v. City of Toledo,* 61 F.Supp.2d 674, 676–77, 680 (N.D.Ohio 1999) (after finding state could not delegate its safety regulation authority to political subdivisions, concluding municipal permit scheme and other towing regulations were preempted), *aff'd in part and rev'd in part,* 246 F.3d 548 (6th Cir.2001); *Harris County Wrecker,* 943 F.Supp. at 729 (concluding permit system did not fall within safety exception and was preempted).

We have found no case, however, and the parties have cited none, which addresses preemption in the context of a claim for damages by a vehicle owner against a towing company alleging his vehicle was wrongfully towed. We nonetheless find the weight of authority compelling that all regulation of intrastate towing services is preempted by federal law unless the regulation falls within a recognized exception. For the reasons stated below, we are not persuaded that Whitten's private right of action under chapter 684 of the transportation code falls within any exception; therefore, we conclude Whitten's claim is preempted by section 14501(c)(1).

■■■ Under the Supremacy Clause of the United States Constitution, federal law may preempt state law either by express provision, by implication, or by a conflict between federal and state law. *N.Y. Conference of Blue Cross v. Travelers Ins.,* 514 U.S. 645, 653–55, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *see also* U.S. CONST. art. VI. In analyzing a preemption issue, we "start with the assumption that the historic police powers of the States [are] not to be superseded by ... [a] Federal Act unless that [is] the clear and manifest purpose of Congress." *Tocher,* 219 F.3d at 1045 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)); *see also N.Y. Conference,* 514 U.S. at 655, 115 S.Ct. 1671. Congressional intent is therefore the "ultimate touchstone" of preemption analysis. *Tocher,* 219 F.3d at 1045 (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). As explained in *Tocher:*

> Federal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such

an extent that it is reasonable to conclude that Congress left no room for state regulation in that field. *See Cipollone*, 505 U.S. at 516[, 112 S.Ct. 2608]. When, however, Congress adopts a statute that provides a reliable indication of Congressional intent regarding preemption, the scope of federal preemption is determined by the statute. *See id.* at 517[, 112 S.Ct. 2608]. "Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted." *Id.*

*Tocher*, 219 F.3d at 1045–46. Therefore, we are required to examine the federal statute alleged to have preemptive effect and determine whether it expresses a reliable indication of congressional intent to preempt the state law at issue. *See id.* at 1046.

In 1994, Congress amended the Interstate Commerce Act to deregulate the motor carrier industry. *See* Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), Pub. L. No. 103-305, § 601(c), 108 Stat. 1569, 1606, *amended by* Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), Pub. L. No. 104-88, §§ 103, 109 Stat. 803, 899 (originally codified at 49 U.S.C. § 11501(h); recodified as amended at 49 U.S.C.A. § 14501(c) (1997)). The House Conference Report accompanying the act indicates that the purpose of the legislation was to put the motor carrier industry on a level playing field with the air carrier industry and free motor carriers from state and local regulation. *See* H.R. CONF. REP. No. 103-677, at 85-87 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1757-59. Congress intended to eliminate the competitive advantage that had arisen in favor of certain air carriers at the expense of ground carriers as a result of the Ninth Circuit's decision in *Federal Express Corp. v. California Public Utilities Commission*, 936 F.2d 1075 (9th Cir.1991). *See id.* at 87, *reprinted in* 1994 U.S.C.C.A.N. 1759; *see also Ace Auto Body*, 171 F.3d at 772. In that decision, the Ninth Circuit held that the truck operations of Federal Express were integral to its air operations and, therefore, the preemption provisions of the Airline Deregulation Act exempted Federal Express, as an air carrier, from state economic regulation governing intrastate motor carrier transportation in California. *Fed. Express Corp.*, 936 F.2d at 1078–79. Congress, therefore, used the law authorizing funding for the Federal Aviation Administration as a vehicle to amend the Interstate Commerce Act in order to provide ground carriers with the same exemption from state and local regulation that air carriers already enjoyed.

As originally enacted, section 601(c) of the FAAAA provided that no State or political subdivision may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). From this preemption provision, Congress initially provided two exceptions: "the safety regulatory authority of a State with respect to motor vehicles;" and "the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility." 49 U.S.C.A. § 1401(c)(2)(A) (1997). In 1995, however, Congress added a third exception for regulation "relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle." Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), Pub.L. No. 104-88, §§ 103, 109 Stat. 899 (codified at 49 U.S.C.A. § 14501(c)(2)(C) (1997)).

Courts have found the addition of the 1995 amendment significant in confirming Congressional intent to regulate intrastate towing. "By creating an exception for state or local regulation of the price of non-consensual towing services after the original preemption statute was enacted, Congress reiterated its intent to preempt all state or local laws regulating other aspects of towing services (related to prices, routes, or services) that are not subject to the exception." *Tocher*, 219 F.3d at 1048; *see also Cardinal Towing*, 180 F.3d at 691 ("The 1995 amendment--which specifically referenced towing--indicates that towing companies performing non-consensual tows are 'motor carriers.' "); *R. Mayer*, 158 F.3d at 544 ("[T]he express reference to towing services in § 14501(c)(2)(C) provides conclusive evidence that Congress intended to extend the general rule of preemption to those aspects of the towing industry that are not listed within the exception."); *Harris County Wrecker*, 943 F.Supp. at 722 ("The addition of § 14501(c)(2)(C) confirms congressional intent in § 14501(c)(1) to preempt state and local towing regulations.").

The legislative history of the amendment is also revealing. The House Report accompanying the legislation states:

> The Committee had been asked to go farther and permit States and political subdivisions thereof to re-regulate all aspects of non-consensual tow truck services. The Committee provision struck a balance between the need to protect consumers from exorbitant towing fees and the need for a free market in towing services.

H.R. Rep. No. 104-311, at 120 (1995), *reprinted in* 1995 U.S.C.C.A.N. 832; *see also Harris County Wrecker*, 943 F.Supp. at 723. The report also states the amendment was "only intended to permit States or political subdivisions thereof to set maximum prices for non-consensual tows, and is not intended to permit re-regulation of any other aspect of tow truck operations." H.R. Rep. No. 104-311, at 119 (1995), *reprinted in* 1995 U.S.C.C.A.N. 831. Furthermore, the conference committee which reconciled competing versions of the legislation adopted the House version and rejected Senate language which would have permitted state regulation of "price *and related conditions.*" H.R. Conf. Rep. No. 104-422, at 218-19 (1995) (emphasis added), *reprinted in* 1995 U.S.C.C.A.N. 903-04; *see also Harris County Wrecker*, 943 F.Supp. at 723–24.

■ We agree with those courts that have concluded section 14501(c)(1) was intended to include intrastate towing services within the definition of "motor carrier." As stated in *Servantes*, "[t]here seems little question that a towing company qualifies as a 'motor carrier,' which is broadly defined as 'a person providing motor vehicle transportation for compensation.' " *Servantes*, 103 Cal.Rptr.2d at 876. The plain language of the statute clearly applies to non-consensual tows. *See R. Mayer*, 158 F.3d at 543 ("under the plain, ordinary meaning of the terms used in § 14501(c)(1), the federal statute expressly preempts state and municipal ordinances that regulated the prices, routes, or services provided by towing companies"); *see also Petrey*, 61 F.Supp.2d at 677; *Cedar Bluff*, 78 F.Supp.2d at 727. While at first it may seem counter-intuitive that Congress would desire to preempt this relatively obscure area of state regulation, the legislative history resolves any doubt that it indeed did just that. Certainly there would have been no reason for the House report accompanying the ICCTA to address "re-regulation" of tow truck operations unless Congress had preempted regulation of towing operations the previous year in the FAAAA. Our research has not revealed a single case since the amendment of the

FAAAA in 1995 which has failed to conclude that section 14501(c)(1) applies to intrastate towing. *See Tocher,* 219 F.3d at 1048; *Cardinal Towing,* 180 F.3d at 691; *Ace Auto Body,* 171 F.3d at 774; *R. Mayer,* 158 F.3d at 543; *Northway Towing,* 94 F.Supp.2d at 804; *Hott,* 92 F.Supp.2d at 1000; *Petrey,* 61 F.Supp.2d at 677; *Harris County Wrecker,* 943 F.Supp. at 724; *Cedar Bluff,* 78 F.Supp.2d at 727; *Servantes,* 103 Cal.Rptr.2d at 876.

Notwithstanding this substantial body of law to the contrary, Whitten contends that the federal statute applies only to interstate commerce and does not reach intrastate towing. In particular, Whitten argues that section 14501(c)(1) is inconsistent with section 13506(b), which provides certain exceptions to the general grant of jurisdiction to the Secretary of Transportation and the Surface Transportation Board for the regulation of motor carrier transportation. In relevant part, section 13506(b) provides that neither the Secretary nor the Board may exercise jurisdiction over "transportation provided entirely in a municipality" or "the emergency towing of an accidentally wrecked or disabled motor vehicle," except to the extent the Secretary or the Board "finds it necessary to exercise jurisdiction to carry out the transportation policy" of the United States. 49 U.S.C.A. § 13506(b)(1), (3) (1997). From this language, Whitten concludes that the grant of general jurisdiction for federal regulation of *motor carrier transportation* "does not confer jurisdiction in the scenario presented in the instant case," but instead, "defeats it." Whitten's reading of the statutory scheme is flawed.

■ The desire of Congress to limit the jurisdiction of the Secretary and the Board is not inconsistent with its desire to preempt state regulation of intrastate towing. The issue before us is not whether Congress delegated this regulatory authority to federal authorities but whether Congress withheld it from the States. A plain reading of section 14501 does not condition preemption under subsection (c) on the motor carrier being subject to the jurisdiction of the Secretary or the Board. *See Greyhound Lines v. City of New Orleans,* 29 F.Supp.2d 339, 345 (E.D.La.1998) (interpreting Transportation Equity Act of the 21st Century, amending section 14501(a) to preempt state regulation of charter bus transportation). Indeed, unlike subsection (a) of section 14501, which preempts state regulation of passenger carriers "subject to jurisdiction under subchapter 1 of chapter 135" (i.e., the general jurisdictional provisions), subsection (c) makes no mention of jurisdiction. *Cf.* 49 U.S.C. § 14501(a); *see also Greyhound Lines,* 29 F.Supp.2d at 345. Thus, the motor carrier preemption provision in subsection (c) is not limited by the jurisdiction provided to the Secretary and the Board under section 13506. *See BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.") (internal quotation omitted).

Furthermore, section 13506 does not prohibit the Secretary and the Board from regulating intrastate towing services. Instead, it provides that any such regulation is contingent on a finding that the regulation is necessary to carry out the interstate transportation policy of the United States Government. *See* 49 U.S.C. § 13506(b); *Greyhound Lines,* 29 F.Supp.2d at 345. Presumably, in the event the Secretary or the Board were to determine federal regulation in this area is necessary, Congress intended that these federal authorities be able to act to carry out the goals of United States transportation

policy unencumbered by the diverse regulatory schemes of state and local governments. *See R. Mayer,* 158 F.3d at 544 (concluding that enforcement of section 14501(c)(1) does not contravene section 13506(b) because the exercise of jurisdiction by the Secretary and Board are necessary to achieve federal government policy objectives); *see also Greyhound Lines,* 29 F.Supp.2d at 345.

Finally, upon enacting the FAAAA, Congress made the express finding that state regulation of intrastate motor carrier[s] substantially affects interstate commerce. FAAAA, Pub. L. No. 103-305, § 601(a), 108 Stat. 1605 (congressional findings); *see also* H.R. CONF. REP. No. 103-677, at 87-88, *reprinted in* 1994 U.S.C.C.A.N. 1759-60. In fact, section 601 of the FAAAA is entitled, "Preemption of Intrastate Transportation of Property." FAAAA, Pub. L. No. 103-305, §§ 601, 108 Stat. 1605. Congress clearly did not intend to limit the FAAAA only to interstate transportation. Thus, the statutory scheme does not support the conclusion that federal regulators must exercise their jurisdiction before Congress can oust state regulators from the field. *Greyhound Lines,* 29 F.Supp.2d at 345.[7]

■■■ To summarize, we hold that both the plain language of the statute and the legislative history reflect clear congressional intent to preempt all state regulation relating to the price, route and service of intrastate towing, except for those matters specifically excepted by statute in subsection (c)(2). We therefore resolve Whitten's first issue against him.

In his second issue, Whitten contends that even if intrastate towing services generally are preempted, chapter 684 of the Texas Transportation Code is excepted from preemption because it falls within the safety regulation exception provided in section 14501(c)(2)(C). Chapter 684 provides for extensive regulation relating to the removal of unauthorized vehicles from a parking facility or public roadway. It includes requirements regarding the placement of towing signs, including color, layout, and lettering height requirements, provisions stating under what circumstance a tow operator may remove a vehicle, and notice provisions a parking facility owner must provide to vehicle owners. *See* TEX. TRANSP. CODE ANN. § 684.012 (Vernon 1999) (removal and storage of unauthorized vehicle); *id.* § 684.014 (towing company's authority to remove and store unauthorized vehicle); *id.* § 684.031 (general requirements for sign prohibiting unauthorized vehicles); *id.* § 684.032 (color, layout, and lettering height requirements). Section 684.084, upon which Whitten's claim is based, creates a private right of action for violations of chapter 684. It states:

(a) A towing company or parking facility owner who violates this chapter is liable to the owner or operator of the vehicle that is the subject of the violation for:

(1) damages arising from the removal or storage of the vehicle; and

(2) towing or storage fees assessed in connection with the vehicle's removal or storage.

(b) A vehicle's owner or operator is not required to prove negligence of a

---

**7.** We also reject Whitten's argument that nonconsensual tows do not fall within section 14501(c)(1) because they are not "services." Whitten claims that no "service" is performed because no benefit accrues to the party towed. We think it evident that the legislation uses the term "services" in the sense of work per-

formed, or operations, rather than as a benefit performed for customers. *See, e.g.,* H.R. REP. No. 104-311, at 119, *reprinted in* 1995 U.S.C.C.A.N. 831 (noting amendment permitting price regulation of "tow truck services" was not intended to permit re-regulation of any other aspect of "tow truck operations.").

parking facility owner or towing company to recover under Subsection (a).

(c) A towing company or parking facility owner who intentionally, knowingly, or recklessly violates this chapter is liable to the owner or operator of the vehicle that is the subject of the violation for $300 plus three times the amount of fees assessed in the vehicle's removal, towing, or storage.

(d) In a suit brought under this chapter, the prevailing party is entitled to recover reasonable attorney's fees.

*Id.* § 684.084 (Vernon 1999). Whitten specifically sought additional damages pursuant to this section, as well as attorney's fees.

The scope of the safety regulation exception also has been the focus of much of the judicial writing concerning tow truck preemption. Some courts have given this exception an expansive reading and have found it sufficient to save an entire regulatory scheme from preemption. *See, e.g., Servantes,* 103 Cal.Rptr.2d at 877–79 (finding public safety purpose in challenged regulations including, inter alia, requirement that towing storage facility accept a credit card for payment). Other courts have viewed the exception more narrowly and have distinguished on a section by section basis those challenged provisions which are sufficiently safety related and those which are not. *See, e.g., Tocher,* 219 F.3d at 1044, 1051–52 (concluding regulations requiring tow company to notify property owner before damaging fence to remove vehicle, and regulation prohibiting removal of unattended vehicle from public highway except as provided by statute,

both fell within safety regulation exception; but finding safety exception inapplicable to requirements for acceptance of credit cards and written authorization by property owner).[8] We are persuaded, however, that no reading of the safety exception can fairly encompass a private cause of action for damages based on a violation of chapter 684 the Texas Transportation Code.

Preliminarily, we note that the "safety exception" is, in part, a misnomer. Rather than being a general exception for safety-related regulation concerning motor carriers, the exception is more narrowly drawn than commonly recognized. The federal statute actually provides:

> [The preemption provision] shall not restrict the safety regulatory authority of a State *with respect to motor vehicles,* the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

49 U.S.C. § 14501(c)(2)(A) (emphasis added). Therefore, the preemption provision applies to "motor carriers," while the safety exception applies only to "motor vehicles." Congress is presumed to choose its words carefully and to mean what it says. We must assume Congress did not mean to exempt all safety regulation pertaining to motor carriers when it used the more narrow qualifying words, "motor vehicles." A plain reading of the statute would ap-

---

**8.** Yet other courts have found it unnecessary to discuss the scope of the safety exemption because the regulation at issue in the case concerned municipal regulation and the court held that the safety exemption is applicable only to a state, not its political subdivisions.

*See, e.g., R. Mayer,* 158 F.3d at 545–48. Because only state regulation is at issue in this case, we need not discuss the issue of whether the safety exemption is delegable to political subdivisions of a state.

pear to indicate that the safety exception is limited to those matters relating to the proper functioning of motor vehicles for safe operation. This seems particularly true when the first clause is read in context with the second, concerning highway route controls pertaining to hazardous cargo and the weight and height of the motor vehicle. If the safety exception in the first clause is read so broadly as to include any regulation touching on safety, it would appear the second clause would clearly be encompassed in the first and, therefore, unnecessary.

To the extent that the meaning of the reference to "motor vehicles" is not apparent, we think the meaning is clarified by the definition of "motor vehicle safety" used in an earlier chapter of the same title, authorizing the Secretary of Transportation to prescribe motor vehicle safety standards. *See* 49 U.S.C §§ 30101-30169 (1997) (chapter 301). In that chapter, the term "motor vehicle safety" is defined as:

> [T]he performance of a motor vehicle or motor vehicle equipment in a way that protects the public against unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident, and includes nonoperational safety of a motor vehicle.

49 U.S.C.A. § 30102(a)(8) (1997). The focus of this definition clearly is on the proper functioning of the motor vehicle rather than traffic regulation or other safety concerns. To be sure, the phrasing used in section 14501(c)(2)(A) is not an exact match to section 30102(a)(8). Nonetheless, we do not see a substantive difference between the wording "the safety regulatory authority of State with respect to motor vehicles" and "the regulatory authority of State with respect to motor vehicle safety." Even if the former construction is meant

to be broader than the latter, it must nevertheless be narrower than the safety regulation of "motor carriers." To read the "safety regulation" exception so broadly as to be unqualified by the phrase "with respect to motor vehicles" ignores the specific wording Congress chose.

Few courts have addressed the fact that the safety regulation exception is qualified by the phrase "with respect to motor vehicles." One exception is the Second Circuit's opinion in *Ace Auto Body*. In that case, the court rejected the argument that the qualifying phrase limited the exception to mechanical components of motor vehicles. The court stated:

> Plaintiffs ... insist that the [safety] exemption extends only to safety regulation of the mechanical components of motor vehicles, e.g., windshield wipers and brakes, and not to municipal management of vehicular accidents. In support of this view, they point out that § 14501(c)(2)(A) exempts only "the safety regulatory authority of a State with respect to motor vehicles" and not with respect to "motor carriers," a term used elsewhere by the statute to denote persons "providing motor vehicle transportation for compensation."

*Ace Auto Body,* 171 F.3d at 774. The court concluded that "such a narrow reading" was supported by neither the text nor the legislative history.

> To the extent that the text's usage of the term 'motor vehicles' creates an ambiguity, this ambiguity does not exclude the possibility of interpreting the phrase 'safety regulatory authority ... with respect to motor vehicles' to encompass the authority to enact safety regulations with respect to motor vehicle accidents and break-downs. Construing the text in this fashion fully comports with Congress' purpose to leave intact state and

local safety regulatory authority under 49 U.S.C. § 14501(c).

*Id.* Additionally, the court found convincing an interpretation of the statute rendered by the United States Department of Transportation, which stated, "[W]e believe that State or local regulations governing the towing of damaged or abandoned vehicles that are public safety hazards would fall within this exemption, assuming again that such regulations are not a guise for broader economic restrictions." *Id.* at 775.

■■■■■ The Second Circuit did not explain why a narrower construction is not supported by the text or renders the statute ambiguous, citing only to the unpublished district court decision.[9] We generally resort to extraneous aids in construction of a statute only if an examination of the literal text discloses some obfuscation or patent ambiguity. *See Houston Chronicle Publ'g Co. v. Woods,* 949 S.W.2d 492, 498 (Tex.App.—Beaumont 1997, no writ). If possible, we must ascertain legislative intent from the language used in the statute and not look to extraneous matters for an intent the statute does not state. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). We do not find the exception for motor vehicle safety to be ambiguous; accordingly, we are not inclined to resort to extraneous materials to read the statute more broadly than the language supports.

Nevertheless, even if the scope of the safety exception is not limited to "motor vehicle safety" as that term is used in section 30102(a)(8), "Congress has made it clear that it 'do[es] not intend the regulatory authority that States may continue to exercise ... to be used as a guise for continued economic regulation as it related

to price, routes or services.'" *Harris County Wrecker,* 943 F.Supp. at 728 (quoting H.R. CONF. REP. No. 103-677, at 84 (1994), *reprinted in* 1994 U.S.C.C.A.N. (1756) (alteration in original)). Thus, even if the state statute at issue is viewed as having a safety component, we must still determine whether it is in reality preempted economic regulation related to routes and services of a tow truck. *See id.; see also Tocher,* 219 F.3d at 1052 (finding safety exception inapplicable to regulations "based on consumer protection rather than safety"); *Ace Auto Body,* 171 F.3d at 774 (holding broad preemption language in section 14501(c)(1) "generally preempts economic regulation by the states within the field of intrastate towing" but exception would apply where safety oriented regulation causes "only incidental economic burdens"); *Hott,* 92 F.Supp.2d at 1000 (concluding challenged regulations "relate to safety concerns, not economic interests"); *Servantes,* 103 Cal.Rptr.2d at 877 (finding statute constitutes exempted safety regulation because "this statute offers far more than economic protection to the consumer").

In our view, a private cause of action based on violations of chapter 684 is more appropriately viewed as economic rather than safety regulation. The statute at issue provides for strict liability for violating chapter 684; no negligence need be shown. TEX. TRANSP. CODE ANN. § 684.084(b). It also establishes additional damages for intentional, knowing, or reckless conduct, and an award of attorney's fees, similar to consumer protection statutes for deceptive trade practices and usury. *Id.* § 684.084(c), (d); *cf.* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1), (d) (Vernon Supp. 2001) (DTPA); TEX. FIN. CODE ANN. §§ 305.001-

---

9. *Ace Auto Body & Towing, Ltd. v. City of New York,* No. 96 Civ. 6547(DLC), 1997 WL 669891, at *8–9 (S.D.N.Y. Oct.28, 1997).

.005 (Vernon Supp. 2001) (usury). Section 684.084 is at bottom a consumer protection statute which seeks to protect economic interests; it is not safety regulation. Attempting to shoehorn section 684.084 into the safety exception would effectively countenance continued economic regulation under the guise of safety regulation. *See Harris County Wrecker*, 943 F.Supp. at 728.

This analysis is consistent with our supreme court's construction of a similar preemption statute in *Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 282 (Tex.1996). While that case did not turn on a "safety exception" to preemption, the court nevertheless made several observations pertinent to our analysis.

In *Kiefer*, the court concluded that the Airline Deregulation Act (ADA), which contains a preemption clause nearly identical to the FAAAA,[10] does not preempt common law negligence claims. *Id.* at 283. In reaching its conclusion, the court reviewed extensively the United States Supreme Court's decision in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) and *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995).

In *Morales*, the United States Supreme Court held that the ADA preempted States from prohibiting allegedly deceptive airline fare advertisements through enforcement of state consumer protection statutes, including the Texas Deceptive Trade Practices-Consumer Protection Act. *Morales*, 504 U.S. at 378, 383–84, 112 S.Ct. 2031. In analyzing the ADA, the Supreme

Court analogized to the Employee Retirement Income Security Act of 1974 (ERISA). The Court noted that the ERISA preemption provision is worded similar to the ADA; it preempts state laws "insofar as they ... *relate to* any employee benefit plan." *Id.* at 385, 112 S.Ct. 2031 (quoting 29 U.S.C. § 1144(a) (emphasis added)).[11] Focusing on "relate to" as "the key phrase," the Court noted that the breadth of the provision's "preemptive reach is apparent from [its] language." *Id.* at 384, 112 S.Ct. 2031. The Court also referred to prior cases characterizing this language as "broadly worded," "deliberately expansive," "conspicuous for its breadth," and having "broad scope" and "expansive sweep." *Id.* The Court concluded that the ADA preemption provision should be interpreted similarly to ERISA, which the Court had previously determined preempts state laws which have "a connection with or reference to" an employee benefit plan. *Id.* (*citing Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). The Court therefore adopted a similar standard for the ADA, concluding that "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted." *Id.* at 384, 112 S.Ct. 2031; *accord* H.R. CONF. REP. No. 103-677, at 83, *reprinted in* 1994 U.S.C.C.A.N. 1755 (explaining that the 1994 revision and recodification of the predecessor to 49 U.S.C. § 41713 was not intended to alter the construction given in *Morales*).

Similarly, in *Wolens*, the United States Supreme Court held that the ADA preempted actions against various airlines

---

**10.** The FAAAA preemption statute was modeled after the ADA. *See Harris County Wrecker*, 943 F.Supp. at 725.

**11.** ERISA defines "state law" as "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C.A.

§ 1144(c)(1) (1999). The preemption provision provides that state law is preempted "as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C.A. § 1144(a) (1999) (emphasis added).

by participants in the airlines' frequent flyer programs for alleged violations of state consumer protection laws. *Wolens*, 513 U.S. at 228, 115 S.Ct. 817. The Court noted the "potential for intrusive regulation of airline business practices inherent in state consumer protection legislation." *Id.* at 227, 115 S.Ct. 817. In the same opinion, however, the Court concluded that private contract actions are not preempted. *Id.* at 228–29, 115 S.Ct. 817. According to the Court, such actions do not constitute enactment or enforcement of state law within the meaning of the ADA. *Id.* The Court drew a fundamental distinction between "what the State dictates and what the airline itself undertakes." *Kiefer,* 920 S.W.2d at 281 (quoting *Wolens,* 513 U.S. at 233, 115 S.Ct. 817). The ADA's preemption clause was not intended "to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens,* 513 U.S. at 228, 115 S.Ct. 817. The Court did not view private contract actions as involving the same potential for intrusive state regulation as does consumer fraud legislation. *See Kiefer,* 920 S.W.2d at 279–80.

The Texas Supreme Court concluded that, for purposes of preemption, common law negligence claims are more similar to contract claims than consumer fraud legislation. *Id.* at 282. Negligence law, it stated, "is not as uniform as contract law, but it is far more policy-neutral than specific-purpose legislation like consumer protection laws." *Id.* The court explained that common law negligence claims are not preempted because they do "not involve the enforcement of policy-laden state law that too closely approaches a regulatory effect." *Id.* at 283. In the court's view, common-law negligence actions do not significantly impinge on Congress's concern that the States not undo federal deregulation with regulation of their own. *Id.*

The court, however, expressed reservations about certain damage claims in negligence actions. The court noted that laws providing for the recovery of punitive damages are not uniform among the states and are more likely to reflect state policy concerns, thereby posing the potential for imposing a "greater regulatory effect than liability for actual damages." *Id.* The court expressed similar concerns regarding mental anguish claims. *Id.* Because in *Kiefer* such damages were not at issue or had yet to be developed in the case, the court was content to leave these issues to a "closer working out" in future cases. *Id.* at 283.

 We recognize that since our supreme court's opinion in *Kiefer,* the United States Supreme Court appears to have retreated somewhat from its expansive reading of the "relate to" language in the ERISA preemption provision. *See Egelhoff v. Egelhoff,* 532 U.S. 141, ——, 121 S.Ct. 1322, 1327, 149 L.Ed.2d 264 (2001) (noting Court has recognized that term "relate to" cannot be taken to "extend to furthest stretch of its indeterminacy"). Nonetheless, we believe the central premise of *Kiefer* remains intact. Specific-purpose legislation, such as consumer protection laws, are too policy-laden to escape preemption in the face of broadly worded federal preemption statutes. *See Kiefer,* 920 S.W.2d at 282.

In our view, Whitten's cause of action based on violations of chapter 684 represents the type of "specific-purpose legislation" that is so inherently policy-laden that it presents an unacceptable potential for intrusive state regulation. Section 684.084 is precisely the sort of consumer protection legislation which the United States Supreme Court determined was preempted in *Wolens* and *Morales* under the similarly-worded ADA. *See Wolens,* 513 U.S. at

226–230, 115 S.Ct. 817; *Morales*, 504 U.S. at 383, 391, 112 S.Ct. 2031. It is irrelevant that it is an individual here rather than the state which seeks to enforce state policy. By providing a private right of action to aggrieved consumers, the Legislature plainly attempted to create incentives for "private attorneys general" to enforce the statute. The State may not escape the preemptive effect of federal statutes by using private litigation as a means of enforcement rather than its own police power. As noted in *Kiefer*, the United States Supreme Court in *Wolens* "squarely reject[ed] the idea that a suit brought by private parties is not enforcement of state law." *Kiefer*, 920 S.W.2d at 281.

■ Accordingly, we hold that the private right of action provided by section 684.084 of the Texas Transportation Code against tow truck operators falls within the class of state consumer protection regulation which is preempted by section 14501(c)(1) and is not excepted by the safety regulation exception found in subsection (c)(2)(C). Thus, private causes of action against towing operators based on violations of chapter 684 are preempted by federal law.

■ Furthermore, we also conclude that the underlying regulatory provision on which the private right of action in section 684.084 is based, section 684.014, suffers from much of the same infirmity as section 684.084. Section 684.014(a) provides that a towing company may, without the consent of the vehicle owner or operator, "remove and store" a vehicle at the expense of the owner or operator if: (1) the towing company has received written verification that certain signage and notice requirements of the chapter have been complied with; or (2) the vehicle is left in violation of section 684.011 [12] or is obstructing a paved driveway or abutting roadway used for entering or exiting a parking facility. Section 684.014(b) provides that a towing company may not remove an unauthorized vehicle except as provided by chapter 684 or a municipal ordinance that complies with chapter 684, or at the direction of a peace officer or the vehicle owner or operator. Section 684.014(c) provides that only a towing company that is insured against liability for property damage incurred in towing a vehicle may remove and store an unauthorized vehicle.

Section 684.014 regulates intrastate towing services and therefore is preempted unless exempted by a statutory exception. The signage and notice requirements in subsection (a)(1) are clearly preempted because their dominant purpose is merely consumer protection. They serve no substantial safety purpose with respect to motor vehicles. The provisions in subsection (a)(2) are more problematic. While prohibitions against obstructing driveways and other vehicles in parking lots may arguably serve a general public safety purpose, it is less clear that state regulation of towing services in such instances falls within the "the safety regulatory authority of a State *with respect to motor vehicles.*" Therefore, it would appear that these provisions are preempted as well, although without the benefit of briefing on this point, we stop short of so holding here. By contrast, the provision in subsection (b)(3) for towing at the direction of a peace officer almost certainly falls within the traditional safety regulatory authority of the State. And, of course, subsection (c) falls within the express exception allowing

---

**12.** Section 684.001 prohibits unattended vehicles that: (1) obstruct vehicular traffic in parking facilities; (2) prevent a vehicle from exiting a parking space; (3) obstruct a properly marked fire lane; or (4) are illegally parked in a disabled parking space.

States to impose minimum financial responsibility requirements on towing operators; therefore subsection (c) is not preempted. *See* 49 U.S.C. § 14501(c)(2)(A).

Whitten has failed to establish that VRC violated any provision of section 684.014 which would not be subject to preemption. Therefore, for this additional reason Whitten's statutory cause of action is preempted by federal law. We therefore resolve Whitten's second issue against him.

### CONTRACT CLAIM

■ In his third issue, Whitten complains the trial court erred in granting VRC's motion for judgment notwithstanding the verdict as to Whitten's contract claim. The jury found that: (1) VRC agreed with Jefferson Creek Apartments that only unauthorized vehicles would be towed from the property; (2) by clear and convincing evidence "*both* VRC *and* Jefferson Creek Apartments*" intended to benefit Whitten by their agreement that only unauthorized vehicles would be towed from the property; and (3) VRC failed to comply with the agreement. On the basis of the foregoing answers, the jury awarded $3500 in actual damages and $7750 in attorney's fees. We conclude the trial court correctly granted VRC's motion for judgment notwithstanding the verdict.

■ To uphold the trial court's judgment notwithstanding the verdict, we must determine that no evidence supports the jury's findings. *Brown v. Bank of Galveston, Nat'l Ass'n,* 963 S.W.2d 511, 513 (Tex.1998); *State Bar of Tex. v. Dolenz,* 3 S.W.3d 260, 264–65 (Tex.App.—Dallas 1999, no pet.). We review only the evidence and inferences tending to support the jury's verdict and must disregard all evidence and inferences to the contrary. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990); *Dolenz,* 3 S.W.3d at 265. If more than a scintilla of evidence

supports the jury finding, it must be upheld. *Culpepper,* 802 S.W.2d at 227; *Dolenz,* 3 S.W.3d at 265.

■ Under general contractual principles, a third party is only entitled to enforce a contract if the third party can show he is either a donee or creditor beneficiary of the contract and not one who is benefitted only incidentally by its performance. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex. 1999); *Reyna v. Safeway Managing Gen. Agency for State and County Mut. Fire Ins. Co.,* 27 S.W.3d 7, 21-22 (Tex.App.--San Antonio 2000, pet. granted, judgm't vacated w.r.m.). That is, one claiming to be a third-party beneficiary of a contract must show that the contracting parties intended to secure some benefit to the third party and that the contracting parties entered into the contract directly and primarily for the benefit of the third party. *MCI Telecomms.,* 995 S.W.2d at 651; *Bass v. City of Dallas,* 34 S.W.3d 1, 7 (Tex.App.-Amarillo 2000, no pet. h.). That a person might receive an incidental benefit from a contract to which he is not a party does not give the person a right of action to enforce the contract. *MCI Telecomms.,* 995 S.W.2d at 651.

■ In determining whether a third party may enforce a contract, courts look only to the intent of the contracting parties. *MCI Telecomms.,* 995 S.W.2d at 651; *Bass,* 34 S.W.3d at 7. Courts will not create a third-party beneficiary contract by implication. *MCI Telecomms.,* 995 S.W.2d at 651; *Bass,* 34 S.W.3d at 7. The intention to confer a direct and primary benefit to a third party must be clearly and fully spelled out in the parties' contract; otherwise, enforcement of the contract by a third party must be denied. *MCI Telecomms.,* 995 S.W.2d at 651; *Bass,* 34 S.W.3d at 7. Consequently, a presump-

tion exists that parties contracted for themselves unless it "clearly appears" that the contracting parties intended a third party to benefit from the contract. *MCI Telecomms.*, 995 S.W.2d at 651; *Reyna*, 27 S.W.3d at 22. If there is any reasonable doubt as to an intent to confer a direct benefit, the third-party beneficiary claim must fail. *Reyna*, 27 S.W.3d at 22; *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied). "Therefore, third-party beneficiary recovery will generally be denied, unless: (1) the obligation of the bargain-giver is fully spelled out, (2) it is unmistakable that a benefit to the third party was within the contemplation of the primary contracting parties, and (3) the primary parties contemplated that the third party would be vested with the right to sue for enforcement of the contract--all presumptions being invoked against liability to the third party." *Reyna*, 27 S.W.3d at 22 (citing *MJR Corp.*, 760 S.W.2d at 15).

We have reviewed the evidence cited in Whitten's brief, and it fails to establish Whitten was a third-party beneficiary to any contract. Whitten has identified no language in any agreement which reflects any intention to confer on him a direct and primary benefit. The only testimony potentially touching on the subject is that a VRC employee testified that signs setting forth the towing enforcement rules for Jefferson Creek Apartments were placed in the complex for the benefit of both the apartments and the residents. This is not evidence from which the jury could conclude VRC and Jefferson Creek Apartments entered into an agreement with the intention of conferring a direct and primary benefit to Whitten. This is at best evidence of an indirect benefit to Whitten, as a resident of the complex, which fails to rebut the presumption against Whitten as a third-party beneficiary.

■ Furthermore, there is no evidence VRC breached any contract. Whitten's theory of the case apparently was that only unauthorized vehicles were to be towed from the apartment complex and, as a resident of the complex, Whitten's car was "authorized." The parking rules for the complex, however, did not limit towing *only* to unauthorized vehicles. Instead, the rules provided: "Unauthorized, abandoned, inoperable vehicles, with flat tires, on jacks/blocks, expired state inspection/registration, will be towed at owner's expense and liability." Thus, the evidence clearly shows that in addition to unauthorized cars, cars with an expired state inspection certificate were subject to being towed. Whitten conceded at trial that his car had an expired state inspection certificate. Therefore, it was subject to being towed under the posted rules.[13] We can find no evidence in the record to support the jury's findings that VRC and Jefferson Creek Apartments entered into an agreement "that only unauthorized cars would be towed from the property" or that VRC breached any such agreement. Accordingly, the trial court did not err in granting VRC's motion for judgment notwithstanding the verdict. We overrule Whitten's third point of error.

We affirm the judgment of the trial court.

---

**13.** Whitten's apartment lease also contained a similar provision.