In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-02-00102-CV
____________

UNION PACIFIC RAILROAD CO., Appellant

V.

NOVUS INTERNATIONAL, INC., Appellee




On Appeal from the 239th District Court 
Brazoria County, Texas
Trial Court Cause No. 5510*JG98 




O P I N I O N
          This appeal concerns the right of appellee, Novus International, Inc. (Novus), 
to sue as a third-party beneficiary of a rail contract entered into between appellant,
Union Pacific Railroad Co. (Union Pacific), and Union Carbide Co. (Carbide). The
trial court granted Novus’s cross-motion for partial summary judgment, which sought
third-party-beneficiary status under the rail contract, and the jury awarded Novus
$2,500,000 in contract damages and $900,000 in attorney’s fees. 
          In three issues, Union Pacific challenges the trial court’s ruling that Novus was
a third-party beneficiary of the rail contract, the trial court’s refusal to submit a jury
instruction on special damages, and the jury’s award of attorney’s fees. Because we
hold that Novus was not a third-party beneficiary of the rail contract, we reverse the
judgment of the trial court and render judgment that Novus take nothing.
Background
          Novus manufactures a poultry-feed supplement named “Alimet” at its
manufacturing plant in Chocolate Bayou, Texas. A key component of Alimet is
methylmercaptopropanol (MMP). In July of 1995, Novus contracted with Carbide
to secure MMP for Alimet production. Carbide agreed to manufacture MMP at its
facility in Taft, Louisiana and to ship the MMP by rail to the Novus plant in
Chocolate Bayou.  
          In July of 1996, Carbide entered into a rail-transportation contract with Union
Pacific. Union Pacific agreed to ship hundreds of products to and from Carbide’s
manufacturing facilities located in Texas and Louisiana. Among the products to be
shipped was the MMP produced at Carbide’s Taft facility. 
          Due to difficulties that arose from its merger with Southern Pacific, Union
Pacific experienced severe disruptions in its rail services in 1997 and 1998. 
Consequently, Union Pacific was unable to transport sufficient amounts of MMP
from Taft to Chocolate Bayou. The reduced supply of MMP forced Novus to suffer
a significant reduction in its Alimet production and inventory. Novus had to transport
smaller amounts of Alimet by faster and more expensive methods (referred to as
“premium freight”) to satisfy customer demand. 
          Thereafter, Novus brought suit against Union Pacific to recover the increased
costs of premium freight that resulted from Union Pacific’s breach of the rail contract. 
Union Pacific filed a motion for summary judgment, contending that Novus was not
a third-party beneficiary of the rail contract between Union Pacific and Carbide and
did not have standing to sue. Novus countered with a cross-motion for partial
summary judgment, seeking third-party-beneficiary status under the rail contract. The
trial court granted Novus’s motion, and the case proceeded to trial, at which point the
jury found in favor of Novus and awarded damages. Third-Party Claim
          In its first issue, which disposes of this appeal, Union Pacific contends that the
trial court erred in granting Novus’s motion for partial summary judgment and in
denying Union Pacific’s motion for summary judgment because Novus was not a
third-party beneficiary of the rail contract. When reviewing cross-motions for
summary judgment, we consider both motions and render the judgment that the trial
court should have entered. Coastal Liquids Transp., L.P. v. Harris County Appraisal
Dist., 46 S.W.3d 880, 884 (Tex. 2001). Our analysis requires us to interpret the rail
contract between Union Pacific and Carbide to determine if Novus was an intended
third-party beneficiary. See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995
S.W.2d 647, 650 (Tex. 1999). 
1.       Standard of Review
          It is well-settled that third-party-beneficiary claims succeed or fail according
to the provisions of the contract upon which suit is brought. Greenville Ind. Sch.
Dist. v. B & J Excavating, Inc., 694 S.W.2d 410, 412 (Tex. App.—Dallas 1985, writ
ref’d n.r.e.); Carnes Corp. v. Thermal Supply, Inc., 359 S.W.2d 99, 100 (Tex. Civ.
App.—Houston 1962, no writ). The construction of the written instrument is a
question of law for the trial court. MCI Telecomms., 995 S.W.2d at 650. We review
a trial court’s legal conclusions de novo. Id. at 651.
          The fact that a person might receive an incidental benefit from a contract to
which he is not a party does not give that person a right of action to enforce the
contract. Id.; Young Ref. Corp. v. Pennzoil Co., 46 S.W.3d 380, 387 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). A third party may recover on a
contract only if the contracting parties intended to secure some benefit to that third
party and only if the contracting parties entered into the contract directly for the third
party’s benefit. MCI Telecomms., 995 S.W.2d at 651; Young Ref., 46 S.W.3d at 387. 
To qualify as one for whose benefit the contract was made, the third party must show
that he is either a donee or creditor beneficiary of the contract and not one who is
benefitted only incidentally by the contract’s performance. MCI Telecomms., 995
S.W.2d at 651; Young Ref., 46 S.W.3d at 387. One is a donee beneficiary if the
performance promised will, when rendered, come to him as a pure donation. MCI
Telecomms., 995 S.W.2d at 651; Young Ref., 46 S.W.3d at 387. If, on the other hand,
that performance will come to him in satisfaction of a legal duty owed to him by the
promisee, he is a creditor beneficiary. MCI Telecomms., 995 S.W.2d at 651; Young
Ref., 46 S.W.3d at 387. 
          In determining whether a third party may enforce a contract, courts look only
to the intent of the contracting parties. MCI Telecomms., 995 S.W.2d at 651; Whitten
v. Vehicle Removal Corp., 56 S.W.3d 293, 311 (Tex. App.—Dallas 2001, pet.
denied). We glean intent from what the parties said in their contract, not what they
allegedly meant. Esquival v. Murray Guard, Inc., 992 S.W.2d 536, 544 (Tex.
App.—Houston [14th Dist.] 1999, no pet.). We may not create a third-party-beneficiary contract by implication. MCI Telecomms., 995 S.W.2d at 651; Whitten,
56 S.W.3d at 311. The intention to confer a direct benefit on a third party must be
clearly and fully spelled out in the four corners of the contract; otherwise,
enforcement of the contract by a third party must be denied. MCI Telecomms., 995
S.W.2d at 651; Whitten, 56 S.W.3d at 311. Thus, a presumption exists that parties
contract for themselves unless it “clearly appears” that they intend a third party to
benefit from the contract. MCI Telecomms., 995 S.W.2d at 651; Whitten, 56 S.W.3d
at 311. Because of this presumption, third-party-beneficiary claims will generally be
denied unless: (1) the obligation of the bargain-giver is fully spelled out, (2) it is
unmistakable that a benefit to the third party was within the contemplation of the
primary contracting parties, and (3) the primary parties contemplated that the third
party would be vested with the right to sue for enforcement of the contract. Whitten,
56 S.W.3d at 311. 
2.       The Rail Contract Between Union Pacific and Carbide 
           The rail contract between Union Pacific and Carbide, including attached
exhibits, consists of nearly 100 pages. Exhibit 2 of the contract delineates inbound
and outbound shipments to and from Carbide’s Texas and Louisiana facilities. 
Among the hundreds of shipments listed in exhibit 2 are three outbound MMP
shipments from Taft, Louisiana to Chocolate Bayou, Texas. These shipments were
described as “Taft outbound liquid chemicals.” 
          Exhibit 9 of the contract is entitled “Service Standards.” Under the sub-heading “INTENT,” exhibit 9 provides:
          Whereas both Parties recognize that safe and reliable inbound and
outbound transportation service by [Union Pacific] at North Seadrift,
Star and Taft affects the ability of [Carbide] to be a quality supplier, they
agree to establish service requirements to ensure quality service. The
number of shipments shall include shipments to storage-in-transit points
as one shipment, and subsequent shipment from the transit point to the
final destination as an additional shipment. These requirements promote
and encourage the continuous improvement of both Parties. 
 
(Emphasis added). Exhibit 9 lists 12 service requirements, three of which include the
following:
•        [Union Pacific] transports the right car to the right location on
time.
 
•        [Union Pacific] is responsive to the special needs of [Carbide]
customers whenever possible.
 
•        [Union Pacific] and [Carbide] effectively communicate with each
other.
 
Based solely on the aforementioned provisions, the trial court found that Novus was
a third-party beneficiary of the rail contract. Novus relies on the same provisions in
contending that the rail contract’s “extraordinary language” supports the trial court’s
finding. We disagree.
          After reviewing the rail contract, we cannot conclude that the contract “fully
and clearly spells out” an intent on behalf of Union Pacific and Carbide to confer a
direct benefit upon Novus. See MCI Telecomms., 995 S.W.2d at 651; Whitten, 56
S.W.3d at 311. Novus is never named in the contract, and all of the obligations flow
between Union Pacific and Carbide.


 Even the service-standards provision of exhibit
9, on which Novus relies, states, “These requirements promote and encourage the
continuous improvement of both Parties.” (Emphasis added). Nowhere in the rail
contract is it stated that the parties are contracting for the benefit of Carbide’s
customers. Because Novus relies on implication to argue otherwise, its third-party
beneficiary claim necessarily fails. See MCI Telecomms., 955 S.W.2d at 651. 
          Any benefit received by Novus was incidental. If Union Pacific had satisfied
the transportation duties that it owed to Carbide, then Novus would have been assured
a steady supply of MMP. But the fact that Novus had a substantial interest in the
enforcement of the rail contract does not grant Novus the right to enforce it. See
Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank, 678 S.W.2d 574, 577 (Tex.
App.—Houston [14th Dist.] 1984, writ ref’d n.r.e.). If we were to adopt Novus’s
interpretation of the rail contract, then Union Pacific would potentially be liable to
every Carbide customer to which Union Pacific transported chemicals or supplies. 
Absent clear contractual language to the contrary, it is illogical to think that Union
Pacific entered the rail contract intending to expose itself to such expansive liability.


 
See Whitten, 56 S.W.3d at 311 (third-party recovery allowed only if primary parties
contemplated that third party would be vested with the right to sue).
          There exists a strong presumption against third-party-beneficiary recovery. 
MCI Telecomms., 995 S.W.2d at 651; Whitten, 56 S.W.3d at 311. Because the rail
contract did not “fully and clearly spell out” that Novus was an intended third-party
beneficiary, Novus was instead an incidental beneficiary without standing to sue. See
Young Ref., 46 S.W.3d at 387. Accordingly, we hold that the trial court erred in
granting Novus’s motion for partial summary judgment, in denying Union Pacific’s
motion for summary judgment, and in allowing Novus, as a third-party beneficiary
of the rail contract, to sue Union Pacific. 
          We sustain Union Pacific’s first issue. As a result of our holding, we need not
address Union Pacific’s remaining issues.Conclusion
          We reverse the judgment of the trial court and render judgment that Novus take
nothing.


 
 



     Elsa Alcala
     Justice

Panel consists of Justices Hedges, Jennings, and Alcala.