**REVISED JANUARY 16, 2003**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

Case No. 01-10194
Summary Calendar

_____

PETER T COLE

    Plaintiff-Appellant

v.

CITY OF DALLAS

    Defendant-Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

December 11, 2002

Before KING, Chief Judge, and HIGGINBOTHAM and BENAVIDES, Circuit

Judges.

PER CURIAM:

On June 20, 2002, in light of its decision in <u>City of Columbus</u>

<u>v. Ours Garage & Wrecker Service</u>, 122 S. Ct. 2226 (2002), the

United States Supreme Court vacated this court's decisions in

<u>Stucky v. City of San Antonio</u>, 260 F.3d 424 (5th Cir. 2001),

<u>vacated</u>, 122 S. Ct. 2617 (2002), and <u>Cole v. City of Dallas</u>, 277

F.3d 1373 (5th Cir. 2001)(per curiam), <u>vacated</u>, 122 S. Ct. 2617

(2002), that 49 U.S.C. § 14501(c) preempts municipal safety

regulations of the towing industry.

1

Ours Garage held that while 49 U.S.C. § 14501(c) generally preempts state regulation of the "price, route or service of any motor carrier," the statutory exception to this preemption for "safety regulatory authority of a State with respect to motor vehicles" saves both state and municipal regulations falling within its reach from federal preemption. Ours Garage, 122 S. Ct. at 2237. Left unresolved in this case on remand from the Supreme Court is thus whether the district court erred in finding that the City of Dallas's Code Chapter 48A, Section 48A-13(a)(7)(A)(xiii) is a motor vehicle safety regulation under 49 U.S.C. § 14501(c)(2)(A).

For the reasons stated below, we find that Chapter 48A, Section 48A-13(a)(7)(A)(xiii) is a motor vehicle safety regulation under 49 U.S.C. § 14501(c)(2)(A).

### STANDARD OF REVIEW

Although the district court denied Cole's application for a preliminary injunction, a determination which is generally reviewed for abuse of discretion, the specific issue relevant to this inquiry is the district court's conclusion of law related to Cole's declaratory judgment request. The conclusion that this regulation is not preempted by federal law is thus reviewed under a de novo standard of review. See Kollar v. United Transp. Union, 83 F.3d 124, 125 (5th Cir. 1996); see also Branson v. Greyhound Lines, Inc., 126 F.3d 747, 750 (5th Cir. 1997) ("We review de novo the district court's rulings on preemption.").

2

**FACTUAL AND PROCEDURAL PREDICATE**

On January 26, 2000, the City Council for the City of Dallas ("City") passed Ordinance No. 21175, which amended Chapter 48A to prohibit persons from receiving a wrecker driver's permit to tow motor vehicles if they have a criminal history including certain specified criminal convictions, documented mental illnesses or unsafe driving records. On February 2, 2000, Peter T. Cole applied for and was denied a wrecker driver's permit based on Section 48A-13(a)(7)(A)(xiii) of the Dallas City Code. Section 48A-13(a)(7)(A)(xiii) prohibits the issuance of a wrecker driver's permit to a person who has been convicted of a crime involving a violation of the Controlled Substances Act (or a comparable state or federal law) punishable as a felony for which less than five years have elapsed since the date of conviction or the date of confinement for the last conviction, whichever is the later date.[1]

Cole appealed the permit denial to an assistant city manager. After holding a hearing in March 2000, the assistant city manager upheld the permit denial.

On July 25, 2000, Cole filed suit in state court seeking injunctive and declaratory relief. The City removed the case to federal court. The district court denied Cole's application for

---

[1] Cole pled guilty to the charge of delivery of a controlled substance (cocaine) in 1994. He was sentenced to a ten-year prison term but later received a ten-year term of shock probation for the crime. This probation was revoked after three years. He thereafter was sentenced to a five-year prison term but was released in January 1999.

3

preliminary injunction and later entered judgment against him, finding that the State had authority to redelegate its regulatory power to the City and that the City properly utilized this authority to pass the "safety" ordinance at issue.

Cole appealed the district court's ruling to this court, specifically arguing that the regulation at issue is preempted by federal law because (1) the State cannot delegate its regulatory power to a municipality under the express language of the statute, and (2) even if the City has jurisdiction to pass a safety regulation under the statute, this particular regulation falls outside the safety exception to federal preemption. In light of the City's acknowledgment that this court's decision in Stucky prevented the City, rather than the State itself, from passing a regulation of this kind, the court vacated the district court's judgment and remanded the case. As stated, the Supreme Court subsequently vacated Stucky and this case based on Ours Garage and remanded both cases to this court for further disposition.

**PREEMPTION ANALYSIS**

The remaining issue before this court is whether the specific regulation in dispute, Chapter 48A, Section 48A-13(a)(7)(A)(xiii), is a motor vehicle safety regulation saved from preemption. Whether this conclusion is correct depends on the parameters of the safety exception, an issue the Supreme Court expressly declined to

answer in Ours Garage.[2]

The federal legislation preempts provisions by "a State [or] political subdivision of a State . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c) (2000). However, as an exception to this preemption directive, Congress provides that the directive "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." Id. at § 14501(c)(2)(A).[3]

Cole contends that the regulation in this case does not qualify as an exercise of "safety regulatory authority" under 49 U.S.C. § 14501(c)(2) when the plain language of the statute is considered. Cole directs this court's attention to a Texas court

---

[2]    Ours Garage, 122 S. Ct. at 2237 ("We express no opinion, however, on the question whether Columbus' particular regulations, in whole or in part, qualify as exercises of 'safety regulatory authority' or otherwise fall within § 14501(c)(2)(A)'s compass.").

[3]    The relevant text of the statute reads:
(c) Motor carriers of property.--
. . .
(2) Matters not covered.--Paragraph (1)--
(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization . . . .

49 U.S.C. § 14501(c)(2)(A) (2000) (emphasis added).

5

of appeals decision, <u>Whitten v. Vehicle Removal Corp.</u>, 56 S.W.3d 293 (Tex. App. – Dallas 2001, pet. denied), decided before <u>Ours Garage</u>, which holds that chapter 684 of the Texas Transportation Code — providing a private cause of action against companies that violate the state's regulations governing towing operations — is not a motor vehicle safety regulation excepted from federal preemption. We decline to get into an extended discussion of <u>Whitten</u>. It is enough to say that <u>Whitten</u> is premised on a definition of "motor vehicle safety" in 49 U.S.C. § 30102(a)(8). As the City points out, § 30102(a) contains the definitions for Chapter 301, entitled "Motor Vehicle Safety," of Title 49 of the United States Code, as distinguished from the definitions for Chapter 145, entitled "Federal-State Relations," of Title 49, which includes § 14501. In addition, the term "motor vehicle safety" is obviously narrower than the term "safety regulatory authority of a State with respect to motor vehicles" that was the subject of <u>Ours Garage</u> and is the subject of this case.

Although the Supreme Court in <u>Ours Garage</u> did not elaborate on the specific parameters of the exception under § 14501(c)(2)(A) for motor vehicle safety regulations, it did opine on the congressional purpose behind the statute. <u>See Ours Garage</u>, 122 S. Ct. at 2236 (stating that "Congress' clear purpose in § 14501(c)(2)(A) is to ensure [] its preemption of States' <u>economic</u> authority over motor carriers of property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety.") (emphasis added).

6

The <u>Ours Garage</u> Court anchored this interpretation to Congress's desire to leave for the states and local governments those responsibilities regarding motor carriers that do not relate to the slender congressional goal of addressing <u>economic</u> authority over such carriers. To this end, it concluded that:

> These declarations of deregulatory purpose [addressing the economic authority of states over motor carriers], however, do not justify interpreting through a deregulatory prism "aspects of the State regulatory process" that Congress determined should <u>not</u> be preempted.
> A congressional decision to enact both a general policy that furthers a particular goal and a specific exception that might tend against that goal does not invariably call for the narrowest possible construction of the exception. Such a construction is surely resistible here, for § 14501(c)(1)'s preemption rule and § 14501(c)(2)(A)'s safety exception to it do not necessarily conflict. The problem to which the congressional conferees attended was "[s]tate <u>economic</u> regulation"; the exemption in question is for state <u>safety</u> regulation. Corroboratively, the measure's legislative history shows that the deregulatory aim of the legislation had been endorsed by a key interest group – the American Trucking Association – subject to "some conditions that would allow regulatory protection to continue for non-economic factors, such as ... insurance [and] safety."

<u>Id.</u> (emphasis in original). Indeed, a survey of the legislative history reveals that Congress intended to divorce the motor carrier industry from state and local economic regulation in order to provide motor carriers such as United Parcel Service the same competitive advantages enjoyed by air carriers like Federal Express. <u>See, e.g.</u>, H.R. CONF. REP. No. 103-677, at 87, <u>reprinted</u>

7

<u>in</u> 1994 U.S.C.C.A.N. at 1759 ("State economic regulation of motor carrier operations causes significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology and curtails the expansion of markets . . . The sheer diversity of these regulatory schemes is a huge problem for national and regional carriers attempting to conduct a standard way of doing business.").

Against this backdrop, the court declines to elasticize Congress's economic goal by narrowly interpreting "safety regulatory authority of a State with respect to motor vehicles." Our view finds support in <u>Ace Auto Body & Towing, Ltd. v. City of New York</u>, 171 F.3d 765, 769 (2d Cir. 1999), in which the Second Circuit addressed whether certain New York City towing laws were saved from preemption under § 14501(c)(2)(A). At issue was the requirement that tow truck businesses and operators employed by them be licensed by the New York City Department of Consumer Affairs to engage in towing. To qualify for such a license, operators had to be at least eighteen years of age, possess an appropriate driver's license and lack traffic or criminal convictions. <u>Id.</u> The Second Circuit held that for these regulations to escape federal preemption under the safety exception, "it is enough, in light of the text and history of § 14501(c), that the [] provisions are reasonably related to the safety aspects of towing disabled vehicles and that the economic burdens thereby imposed are only incidental." <u>Id.</u> at 777. With

8

respect to the city's criminal history regulation (among others), the court held that "[m]ost of these requirements are so directly related to safety or financial responsibility and impose so peripheral and incidental an economic burden that no detailed analysis is necessary to conclude that they fall within the § 14501(c)(2)(A) exemptions." Id. at 776. See also Tocher v. City of Santa Ana, 219 F.3d 1040, 1051 (9th Cir. 2000) (pre-Ours Garage case holding that sections of the California Vehicle Code are exempt from preemption because "[e]ach of these provisions is designed to make the towing and removal of vehicles safer by insuring that only professionals tow vehicles and that the removal does not endanger the general public or the owner of the property where the vehicle was removed"), cert. denied, 531 U.S. 1146 (2001).

The Dallas City Council passed the Chapter 48A amendment to address safety concerns "with respect to motor vehicles," as expressly allowed by the exception for motor vehicle safety regulations. The ordinance delineates several safety concerns that underlie the regulations found in Chapter 48A. Chapter 48A's stated policy is to protect "the public interest as it relates to the parking of vehicles on private property and to the removal of those vehicles to vehicle storage facilities without the consent of the vehicle owners or operators." The specific criminal history requirement at issue is designed to curtail confrontation between truck operators and non-consenting vehicle owners. The ordinance

states that:

> [T]he city council believes that the proposed safety-related regulations for nonconsensual tows would promote the public safety of both visitors and residents of the city of Dallas by contributing to a decrease in the potential for confrontation and violence between vehicle owners and the persons who tow their vehicles; a decrease in bodily injury and property damage caused by faulty tow truck vehicles and equipment or by incompetent, negligent, and criminal actions of tow truck operators and drivers . . . .

That the criminal history regulation has, at its core, concern for safety is manifest. It is difficult to imagine a regulation with a more direct protective nexus or peripheral economic burden. Moreover, despite providing this court with supplemental briefing, Cole has raised no argument pointing the court to some hidden pretextual economic goal behind the provision.[4]

## CONCLUSION

The disputed regulation, Section 48A-13(a)(7)(A)(xiii), is a motor vehicle safety regulation under 49 U.S.C. § 14501(c)(2)(A). The final judgment of the district court is AFFIRMED.

---

[4] The district court's holding in this case covered all of Chapter 48A. Our opinion is limited to the specific provision of Chapter 48A that created Cole's problem, specifically Chapter 48A, § 48A-13(a)(7)(A)(xiii).