# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 02-2876

———————

Tow Operators Working to Protect    *
Their Right to Operate on the Streets    *
of Kansas City, et al.,    *
   *
     Plaintiffs - Appellants,    *    Appeal from the United States
   *    District Court for the
     v.    *    Western District of Missouri.
   *
City of Kansas City, Missouri, et al.,    *
   *
     Defendants - Appellees.    *

———————

Submitted: February 13, 2003

Filed: August 4, 2003

———————

Before LOKEN,[*] RILEY, and SMITH, Circuit Judges.

———————

LOKEN, Chief Judge.

In the FAA Authorization Act of 1994, Congress sought to equalize competition between air carriers and motor carriers in the transportation of property by uniformly preempting state economic regulation of their activities, but not state safety regulation. The motor carrier provisions are codified at 49 U.S.C. § 14501(c).

---

[*]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

The statute provides that (i) States and their political subdivisions may not enforce a law "related to a price, route, or service of any motor private carrier . . . with respect to the transportation of property," but (ii) this preemptive prohibition "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." §§ 14501(c)(1), (2)(A). The legislative history of the safety exception includes a significant caveat: "The conferees do not intend the regulatory authority which the States may continue to exercise . . . to be used as a guise for continued economic regulation as it relates to prices, routes or services." H.R. CONF. REP. NO. 103-677, at 84, reprinted in 1994 U.S.C.C.A.N. 1715, 1756.

In February 2000, Kansas City joined a number of other cities in moving to stop the practice known as "wreck chasing," in which multiple tow truck operators proceed to the scene of an accident to solicit towing business from the unfortunate vehicle owners and drivers. The Kansas City ordinance declared that it is "unlawful for the owner or operator of a tow vehicle to . . . [s]top at or proceed to the scene of an accident unless called to the scene, requested to stop, or flagged down by the owner or operator of a vehicle involved in an accident or requested to perform the service by a law enforcement officer . . . ." KANSAS CITY, MO., CODE OF ORDINANCES § 76-287(2) ("the Ordinance"). In addition to passing the Ordinance, Kansas City undertook to design a system in which the Kansas City police will dispatch approved towing contractors to accident scenes on a rotating basis.

An association of Kansas City tow truck operators and its members then filed this action, seeking a declaration that the Ordinance is unlawful on numerous grounds and an injunction barring its enforcement. Like the parties and the district court,[1] we will refer to plaintiffs collectively as "Tow Pros." Tow Pros' complaint did not challenge whatever rotational system Kansas City proposed to adopt. Indeed, the

---

[1]The Honorable Dean Whipple, Chief Judge of the United States District Court for the Western District of Missouri.

details of that system are not part of the record. Instead, Tow Pros based their claim on the theory that the safety exception in § 14501(c)(2)(A) is limited to a State's safety laws and regulations, and does not apply to local government ordinances, as the Eleventh Circuit held in R. Mayer of Atlanta, Inc. v. City of Atlanta, 158 F.3d 538, 545-48 (11th Cir. 1998), cert. denied, 526 U.S. 1038 (1999). The district court granted summary judgment and dismissed the complaint. Two Pros appeal only the dismissal of their claim that the Ordinance is preempted by 49 U.S.C. § 14501(c)(1). We affirm.

Tow Pros filed a motion for a preliminary injunction along with the complaint. Because the Ordinance is not state law, Tow Pros argued that it is preempted by § 14501(c) "even assuming *arguendo* that the Ordinance has a legitimate basis in safety and is not merely economic protectionism." In support of their claim of irreparable injury, Tow Pros submitted some thirty affidavits, nearly identical in form, in which individual tow operators averred that they do not "qualify for the rotation towing system presently being proposed" and would be injured if prohibited "from soliciting towing . . . from vehicle owners at the scene of motor vehicle accidents."

The district court denied Tow Pros' motion for a preliminary injunction. Addressing the circuit conflict over whether the safety exception applies to local ordinances, the court agreed with the Second Circuit that the exception applies so long as the State has properly delegated its safety regulatory authority, as Missouri has done in granting Kansas City charter-city authority. See Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d 765, 775 (2d Cir.), cert. denied, 528 U.S. 868 (1999). The court went on to conclude that the Ordinance is safety-oriented and not economic regulation because it "undisputedly is intended to eliminate the practice and results" of wreck-chasing as described in other cases.[2]

---

[2]See Ace Auto Body, 171 F.3d at 768, 774-75; Harris County Wrecker Owners for Equal Opportunity v. City of Houston, 943 F. Supp. 711, 728-29 (S.D. Tex. 1996).

Defendants then moved for summary judgment on the basis of the court's preliminary injunction ruling. In opposition, Tow Pros urged the court to reconsider its conclusion that the safety exception applies to local ordinances "in light of the growing federal circuit court authority . . . contrary to the Ace Auto Body decision upon which this court relied." Tow Pros submitted no evidence countering the court's ruling that the Ordinance is safety-oriented legislation. Tow Pros simply incorporated by reference the affidavits submitted in support of their preliminary injunction motion. The district court granted summary judgment dismissing the complaint "for the reasons set forth" in its preliminary injunction ruling.

Tow Pros then appealed the court's preemption ruling. While the appeal was pending, the Supreme Court ended the circuit conflict regarding the scope of the safety exception, agreeing with the Second Circuit and the district court that the safety exception applies to a local government's exercise of the State's properly delegated safety regulatory authority. City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424 (2002). Stripped of their theory for the lawsuit, Tow Pros now argue there is insufficient evidence to support the district court's ruling that the Ordinance falls within the safety exception in § 14501(c)(2)(A). Tow Pros argue that summary judgment was premature on this issue because defendants submitted no evidence establishing that the Ordinance is "genuinely responsive to legitimate safety concerns" and not a "guise" for economic regulation. Tow Pros urge us to remand so the parties may further develop the record on this issue. We review this issue of federal preemption de novo. See Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999).

Certainly, Tow Pros raise a legitimate issue on appeal -- whether the Ordinance falls within the safety exception in § 14501(c)(2)(A). "Local regulation of prices, routes, or services of tow trucks that is not genuinely responsive to safety concerns garners no exemption from § 14501(c)(1)'s preemption rule." Ours Garage, 536 U.S. at 442. However, Tow Pros failed to preserve the issue. In moving for a preliminary

injunction, Tow Pros *assumed* the Ordinance was safety-related. In denying that motion, the district court specifically ruled that the Ordinance is "sufficiently safety-oriented." Defendants then moved for summary judgment on the basis of that ruling. At that point, the burden was on Tow Pros to come forward with evidence creating a genuine fact dispute on this issue, for example, evidence showing that the Ordinance, either in purpose or effect, is the prohibited regulation of prices, routes, or services, rather than genuine safety regulation. See FED. R. CIV. P. 56(e); Cole v. City of Dallas, 314 F.3d 730, 735 (5th Cir. 2002) (tow operator "raised no argument pointing the court to some hidden pretextual economic goal behind the [safety] provision").

Tow Pros's response to the motion for summary judgment did not so much as raise the specter of an ulterior motive, nor did Tow Pros attempt to show that Kansas City's rotational system has the effect of regulating prices, routes, or services even if the Ordinance itself is safety-oriented. On this record, particularly given the presumption against federal preemption of state police powers, see Ours Garage, 536 U.S. at 432-33, the district court properly accepted Kansas City's undisputed, and facially plausible, assertion of a genuine safety purpose and concluded that the Ordinance is not preempted by § 14501(c)(1).

Finally, because § 14501(c)(2)(A) defines the safety exception in terms of "motor vehicles," rather than "motor carriers," Tow Pros argue that the exception encompasses only regulations that address the safety of the mechanical components of motor vehicles, such as brakes, lights, tires, and wheels. Like the Second Circuit and the U.S. Department of Transportation, we decline to undermine the presumption against preempting state police powers by construing the safety exception so narrowly. See Ace Auto Body, 171 F.3d at 774-75; U.S. Dep't of Transp., Intrastate Trucking Deregulation: An Analysis and Interpretation of Title VI, Federal Aviation Administration Authorization Act of 1994, P.L. 103-305 (Mar. 1995), at 2 ("we believe that State or local regulations governing the towing of damaged or abandoned

vehicles that are public safety hazards would fall within [the safety exception]"), quoted in <u>Ace Auto Body</u>, 171 F.3d at 775.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.