873 So.2d 706 (2004)
CAPITOL CITY TOWING & RECOVERY INC.; Blackjack Towing, Inc.; Tow Power, Inc.; and Yvonne E. Reed
v.
STATE of Louisiana, through the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, Office of State PoliceTowing and Recovery Unit; Office of State PoliceTroop A; and Sgt. R. Wayne Ryland.
No. 2003 CA 0647.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
*708 Yvonne Reed, Vincent DeSalvo, Jack Harris, Baton Rouge, for Appellee Plaintiff Capitol City Towing & Recovery, Inc., et al.
Michael C. Barron, Baton Rouge, for Appellant Defendant La. Dept. of Public Safety & Corrections Office of the State Police.
Paul Schnexnayder, Baton Rouge, for Appellant Defendant La. Dept. of Public Safety & Corrections Office of State Police.
David C. Kimmel, Baton Rouge, for Appellant Defendant La. Dept. of Public Safety & Corrections Office of State Police.
Panel composed of Judges FRANK FOIL, BRADY M. FITZSIMMONS and EDWARD J. GAIDRY.
FOIL, J.
This appeal challenges a trial court's determination that numerous Louisiana statutes regulating the towing/storage industry, as well as regulations promulgated pursuant to those statutes, are preempted by federal law. We reverse that ruling, finding that all of the challenged provisions are exempt from preemption by the exceptions provided for in the federal statute.

BACKGROUND
In 1996, Yvonne Reed and one or more of the towing companies she owned, were cited by the State of Louisiana, Office of State Police, for alleged infractions of Louisiana's Towing and Storage Act and regulations applicable to towing businesses. Administrative hearings ensued, and on June 14, 1996, Reed, along with Capitol City Towing & Recovery, Inc., Blackjack Towing, Inc., and Tow Power, Inc. (collectively, Capitol City Towing) filed this lawsuit against the State of Louisiana, seeking to enjoin the State Police from enforcing
the towing laws against them. Specifically, Capitol City Towing alleged it had been subjected to a pattern of harassment by the State Police, causing it to lose business and revenues. Capitol City Towing also maintained that the regulations were invalid, the State Police lacked authority to issue various orders and citations, and the citations and orders were issued in violation of Capitol City Towing's due process rights.
In a supplemental and amending petition, as well as a motion for summary judgment, Capitol City Towing sought a declaration that various sections of the Louisiana Towing and Storage Act, La. R.S. 32:1711 et seq., and administrative provisions adopted in accordance with those statutes, are preempted by federal law. Louisiana's Towing and Storage Act was enacted in 1989 to regulate those persons engaged in the business of towing and storing vehicles. The Act vested the Department of Public Safety, Office of State Police, with regulatory authority to administer the Act, and to promulgate rules and regulations to carry out the provisions of the statute. Pursuant to this authority, regulations directed toward the towing business were promulgated in Title 55 of the Louisiana Administrative Code.
49 U.S.C. § 14501(c) expressly preempts state regulation of certain aspects of the motor carrier industry, but also preserves the authority of the states to regulate motor carriers with respect to matters related to safety and financial responsibility. Neither party disputes the applicability of the federal legislation to intrastate businesses involved in the towing and storage of vehicles.
Specifically, Capitol City Towing alleged that federal law preempted the following statutes, rules and regulations: (1) La. *709 R.S. 32:1714(2), which allows the State Police to adopt rules and regulations to ensure that no person shall operate a towing business when they arrive at the scene of a vehicle accident without being called by the police or by the owner of the vehicle or his representative and Section 1933 of Title 55, which implements the prohibition of solicitation of towing business, (2) Section 1917A of Title 55, mandating that towing operators wear clothing sufficient to identify the towing company and the driver; (3) Section 1917C of Title 55, requiring towing operators to develop an itemized statement, bill or invoice of the towing and storage charges incurred for each vehicle towed or serviced; (4) Sections 1917E and 1933C of Title 55, prohibiting a towing service from receiving calls on any police radio communication system or by the use of CB radios unless authorized by a law enforcement agency and banning police monitoring devices in tow trucks; (5) Section 1939A, B, D & E of Title 55, setting forth requirements for storage facility business practices, including those pertaining to storage areas, storage yard practices, hours of operation, billing statement requirements, internal filing of invoices, internal décor and maintenance of headquarters facility, and inspection procedures; (6) La. R.S. 32:1723, requiring the business owner to maintain adequate records on the storage of all vehicles, which shall remain open to inspection by any peace officer at any time the business is open; (7) Section 1941 of Title 55, relating to the procedures for handling stored vehicles, including a requirement that the vehicles be handled and returned in substantially the same condition they existed before being towed and requiring licensees to employ reasonable safeguards and procedures to ensure all personal belongings and contents in the vehicle are intact and returned to the vehicle owner upon release of the vehicle; (8) La. R.S. 32:1718C and Section 1943 of Title 55, subsections A, B, C, D, H, I, J and K, requiring the facility to provide reasonable security barriers to prevent free entry into the facility to assure security to the property contained therein, including fencing and adequate lighting, prohibiting the shared storage of a facility by two or more towing companies, and setting forth record keeping requirements; (9) La. R.S. 32:1714(6) and Section 1945A and B of Title 55, setting forth maximum fees for storage of vehicles and prohibiting additional charges for services not required for the towing or moving of the vehicle during regular business hours; (10) La. R.S. 32:1720 and Section 1949 of Title 55, requiring that the storage facility provide the vehicle owner with information including the location and name of the storage facility and other information relating to the vehicle and setting forth maximum charges that can be charged by owners as administrative costs associated with the owner's notification obligations; (11) La. R.S. 32:1733, providing that in parishes with a population of 400,000 or more, where a vehicle has been parked on private property and a towing company is asked to remove it and store it by the owner or lessee of the property, the fee charged by the towing company shall not exceed the towing fee a local governing authority would have charged had the vehicle been towed for a violation while parked on public property; and (12) Section 1921A of Title 55, requiring all tow trucks to carry the equivalent of a five-gallon can of oil-absorbant material such as sand or clean dirt in a weatherproof container.
With the exception of La. R.S. 32:1733, the trial court declared the above cited provisions to be unconstitutional and preempted by federal law, rejecting the State's argument that the statutes, rules *710 and regulations fell under the statutory exemptions from preemption. The judge also denied the State's request to deem all emergency tows from private property as nonconsensual tows not falling under the scope of the preemption provision. The court enjoined the State Police from enforcing any of the enumerated rules, statutes and regulations.
A direct appeal was taken to the Louisiana Supreme Court, which determined that the trial court's decision was rooted in the issue of federal preemption, a matter of statutory construction, which did not constitute determination of the constitutionality of a state law. Accordingly, the court transferred the case to this court for consideration on the merits. Capitol City Towing & Recovery, Inc. v. State, Department of Public Safety & Corrections, 03-0075 (La.3/21/03), 842 So.2d 321.

PREEMPTION
Under the Supremacy Clause of the United States Constitution, "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Federal law preempts state law under this clause whenever Congress expressly preempted state action, Congress has installed a comprehensive regulatory scheme in the area, thus removing the entire field from the state realm, or the state action directly conflicts with the force or purpose of federal law. Cardinal Towing & Auto Repair, Inc., v. City of Bedford, Texas, 180 F.3d 686, 690 (5th Cir.1999).
In the Federal Aviation Authorization Act of 1994, Congress moved to deregulate the motor carrier industry by preempting state regulation of the prices, routes and services of motor carriers, and providing for exemptions from the statutes' preemptive effect. That provision later became codified in the Interstate Commerce Commission Termination Act at 49 U.S.C. § 14501(c). 49 U.S.C. § 14501(c) expressly preempts state laws "related to a price, route, or service of any motor carrier....with respect to the transportation of property." However, Congress provided four statutory exemptions from preemption in Section 14501(c)(2)(A). The first exempts the "safety regulatory authority of a State with respect to motor vehicles." Also exempted from preemption are the State's authority to impose highway route controls or limitations under certain conditions, the State's authority to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements, and the authority of a State to regulate prices for "nonconsensual" tow truck services.
At issue in this case is whether the statutes, rules and regulations attacked by Capitol City Towing are preempted by 49 U.S.C. § 14501(c), or whether those provisions fall under Louisiana's safety regulatory authority and are thus saved from preemption. Where, as here, a federal statute expressly preempts state or local laws, in determining the scope of that preemption, a court must begin with the assumption that Congress did not intend to supersede the historic police powers of the states unless that was the clear and manifest purpose of Congress. City of Columbus v. Ours Garage and Wrecker Service, Inc., 536 U.S. 424, 432, 122 S.Ct. 2226, 2232, 153 L.Ed.2d 430 (2002). Thus, Congress' purpose in enacting the law is the ultimate touchstone of preemption analysis. Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d 765, 771 (2nd Cir.1999), cert. denied, 528 U.S. 868, 120 S.Ct. 166, 145 L.Ed.2d 140 (1999).
*711 According to judicial decisions surveying the history of 49 U.S.C. § 14501(c), Congress observed that state economic regulations of motor carrier operations presented a huge problem for national and regional carriers attempting to conduct a standard way of doing business. The purpose behind the legislation was to put the motor carrier industry on the same playing field as the air carrier industry, which had already been deregulated by Congress. In so doing, Congress hoped to eliminate the competitive advantages air carriers, such as Federal Express, had over motor carriers, such as the United Parcel Service. Congressional reports clarified that the preemption exemptions simply reflect the fact that State authority to regulate safety, financial fitness and insurance of motor carriers is not affected since regulation in those areas is not a price, route or service. See Cole v. City of Dallas, 314 F.3d 730, 734 (5th Cir.2002); Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d at 772. In light of these objectives, the Supreme Court in Ours Garage concluded that Congress' clear purpose was to preempt the State's economic authority over motor carriers of property, not restrict the preexisting and traditional state police power over safety.
In determining whether state regulations pertaining to the towing industry are preempted by federal law, federal courts have taken the position that regulations reasonably related to the safety aspects of towing disabled vehicles, with only an incidental economic burden imposed thereby, will fall under the safety exception. Cole v. City of Dallas, 314 F.3d at 734; Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d at 774. Applying this test, the court in Ace Auto Body upheld a city's rotational towing requirements, as well as regulations pertaining to licensing requirements, display of information, reporting, recordkeeping, criminal history, insurance, posting of bonds, and maintenance of storage and repair facilities. See also Tow Operators Working to Protect Their Right to Operate on the Streets of Kansas City v. City of Kansas City, Missouri, 338 F.3d 873 (8th Cir.2003) (upholding rotational towing requirement designed to prevent "wreck chasing"), Cole v. City of Dallas, 314 F.3d 730 (holding a regulation making certain persons ineligible to receive permit to operate tow truck saved from preemption under safety exception).
With this test in mind, we turn to the specific provisions of Louisiana's Towing and Storage Act and administrative regulations declared to be preempted by the trial court. Capitol City Towing argues that the provisions are nothing more than economic regulations aimed at the towing industry and are the type of regulations Congress intended to preempt. The State, on the other hand, urges that the subject statutes and regulations found to be preempted by the trial court come within the safety exemption of 49 U.S.C. § 14501(c). We agree with the State's position.
The first group of challenged provisions institute a ban on solicitation of towing business by tow truck operators (La. R.S. 32:1714(2) and Section 1933 of Title 55). The State submitted the affidavit of Captain Wayne Ryland of the Louisiana State Police, who attested that in order to obtain business, tow trucks barge through intersections, down highways and even through accident scenes to be the first tow truck at the scene. Captain Ryland attested that tow truck operators fought over tows, interfered with medical care of victims, and solicited to take victims to doctors and lawyers to gain towing business. This type of regulation, aimed at preventing "wreck chasing," has previously been upheld by federal courts in the Ace Auto *712 Body and Cole cases as falling within the state's safety regulatory authority. Likewise, we find the ban on solicitation to be designed to protect the public from the safety hazards associated with wreck-chasing, and any economic effects on intrastate towing are incidental, thus bringing the ban on solicitation within the safety exemption. Additionally, as the limitations on the use of CB radios and police communications, found in Sections 1917E and 1933C of Title 55, also further the State's goal of eliminating "wreck-chasing" by the towing industry, they too fall within the safety exemption.
Section 1917A of Title 55, requiring that tow operators wear clothing sufficient to identify the towing company and driver, was challenged by Capitol City Towing as imposing an unreasonable economic burden on towing companies that is unrelated to safety concerns. We find, however, that the provision is clearly related to the efficient administration of accident scenes and is designed to make the towing and removal of vehicles safer by insuring that only professionals, who can be easily identified, tow vehicles. Therefore, this provision falls under the safety exemption to preemption.
The next set of regulations declared preempted by the trial court deal with storage facility requirements, and can be found in Title 55 at Sections 1917C, 1939A, B, D & E; 1941; 1943 A, B, C, D, H, I, J and K; 1945 A and B and 1949, as well as La. R.S. 32:1714(6), 1718C, 1720 and 1723. These regulations set forth requirements for storage facility business practices including hours of operation, itemized statement of charges, maintenance of records, requirements for handling stored vehicles, notification of owners, and pricing of storage services. The regulations also require a storage facility to provide a reasonable security barrier to prevent free entry to the facility. These provisions are largely aimed at protecting the owners of stored vehicles and the stored property and cannot be viewed as a "guise for economic regulation." Instead, as the court in Ace Auto Body observed in upholding similar regulations, the challenged provisions reasonably related to safety of towing disabled vehicles or financial responsibility of the towing operator and impose so peripheral and incidental an economic burden on interstate commerce that no detailed analysis is necessary to conclude that they fall within the Section 14501(c)(2)(A) exemptions. Ace Auto Body & Towing Ltd. v. City of New York, 171 F.3d at 776-77.
The last provision struck down by the trial court requires towing companies to carry "oil-absorbent materials" and weatherproof containers to store the materials in. Capitol City Towing acknowledges that carrying oil absorbent materials is related to safety, but complains that it is too economically burdensome for the State to require it to place the materials in weatherproof containers. We find that requiring oil-absorbant materials, such as sand or oil, to be protected from the elements, is clearly related to vehicle safety and thus is saved from preemption under the safety exemption.[1]

CONCLUSION
For the foregoing reasons, we find that all of the challenged provisions of Louisiana's *713 Towing and Storage Act and regulations found in Title 55 fall within the safety exemption and are not preempted by 49 U.S.C. § 14501(c). Accordingly, we reverse the judgment of the trial court decreeing the enumerated rules, statutes and regulations to be preempted by federal law. This case is remanded to the trial court to conduct proceedings consistent with this opinion. Costs of this appeal are assessed to appellees.
REVERSED AND REMANDED.
NOTES
[1] In remaining assignments of error, the State argues that the trial court erred in refusing to recognize the State's authority to regulate all emergency tows as "non-consensual tows" falling under one of the express exemptions to preemption. Because we find the statutes and regulations at issue fall under the safety exemption, we pretermit discussion of the State's remaining assignments of error.